**PARISH OF EAST BATON ROUGE**
**and City of Baton Rouge**

v.

**The FIDELITY & CASUALTY COM-**
**PANY OF NEW YORK.**

**Civ. A. No. 71–199.**

United States District Court,
M. D. Louisiana.

March 29, 1974.

David W. Robinson, Watson, Blanche, Wilson, Posner & Thibaut, Baton Rouge, La. for The Fidelity & Casualty Co. of New York.

Robert L. Kleinpeter, Baton Rouge, La. for third party defendant Bryan Clemmons.

E. GORDON WEST, District Judge:

This diversity case, originally filed in the State Court and removed to this Court by the defendant pursuant to the provisions of Title 28, United States Code, Section 1446, concerns the interpretation of a fidelity bond issued by the defendant on January 1, 1961, to insure the faithful performance by the Sheriff of East Baton Rouge Parish of his duties as Tax Collector for the City of Baton Rouge and Parish of East Baton Rouge (hereinafter plaintiffs). The original bond, in the amount of $50,000.-00, was issued on January 1, 1961, to cover the period January 1, 1961, to January 1, 1962. For each of the ten years subsequent to the issuance of the original bond, rather than issue new bonds each year, continuation certificates were issued, continuing the bond in force until January 1st the following year. The last of these certificates entered into evidence continued the bond in effect until January 1, 1972.

During the years 1968, 1969, and 1970, while the bond was in effect by virtue of the annual continuation certificates, certain sums of money collected by the office of the Sheriff of East Baton Rouge Parish were stolen by the Chief Deputy Tax Collector. A total of some $460,000.00 was stolen, of which amount $180,000.00 represented taxes which had been collected by the Sheriff and which the Sheriff was obligated to pay over to the plaintiffs.

Plaintiffs made demand upon the defendant for the sum of $150,000.00 contending that the defendant was liable for an amount up to $50,000.00 for each of the three years in which losses occurred. The defendant, on the other hand, has paid to the plaintiffs the sum of $50,000.00 which it contends is its limit of liability under the bond and under the terms of the various continuation certificates.

The defendant has filed a motion to dismiss which the Court has taken under submission. Both parties were allowed to file briefs and whatever evidence they wished on the matter. Thus under Rule 12(b), Federal Rules of Civil Procedure, the motion shall be treated as one for summary judgment and disposed of pursuant to Rule 56.

The essential facts necessary to the decision of this case are not in dispute. The original bond, executed in 1961, covering the period January 1, 1961 to January 1, 1962 contained no provision with regard to cumulative liability or renewal of the bond for subsequent years. Each annual renewal, or continuation of the bond was accomplished through the use of continuation certificates, issued by the defendant and obviously accepted for ten consecutive years by the plaintiffs. Each of these certificates contains, in clear and unambiguous language, the following provision:

"This premium is paid and is accepted upon the express stipulation that the liability of the Company under the bond herein described shall not be cumulative, and that in no event shall the aggregate liability of the Company for any one or more defaults of the Principal, during any one or more years of the suretyship under the said bond, as extended by this or any other extension of the term thereof, exceed the amount set forth in said bond or any existing certificate changing the amount of said bond."

It is the position of the defendant that its liability is thus clearly limited and defined by the language contained in each continuation certificate. The plaintiffs, on the other hand, urge the Court to find that a separate contract for each calendar year resulted from the procedure employed by the defendant in continuing the bond, with a resulting separate liability, each in the face amount of the original bond for each

year that the bond was thus continued in force.

■■ The interpretation of fidelity bonds and the effects of renewal and continuation upon the surety's liability has been a troublesome area for the courts for many years, with varying results. But it is fair to say that:

"The rule generally recognized is that a renewal of a fidelity policy or bond constitutes a separate and distinct contract, for the period of time covered by such renewal, unless it appears to be the intention of the parties, as evidenced by the provisions thereof, that such policy or bond and the renewal thereof shall constitute one continuous contract." 25 C.J. 1109 § 16.

and that:

"Under the view usually taken of renewals it has been held that the insurer's liability is not limited to the amount named in the original fidelity contract, but that there is a liability for the amount fixed by such original contract for a loss occurring during its life and likewise a liability for the amount fixed in any renewal for a loss occurring during its life. When, however, as may be the case, a fidelity policy or bond and the renewals thereof are intended by the parties to constitute one continuous contract, the liability of the insurer is limited to the sum named in the original bond." 25 C.J. 1110 § 16.

It is also basic law that:

"The extent of liability of the company under a contract of fidelity insurance depends on the terms of the contract. While the general rule that contracts of insurance, where they are ambiguous, will be construed against the company applies, nevertheless the liability of the company cannot be extended beyond the terms of the contract." 45 C.J.S. Insurance § 980.

■ Thus, in order to determine the extent of liability of the issuer of a fidelity bond, it is necessary to look to the terms of the agreement itself, which must be considered to be the law between the parties. It is well settled law that by express provision contained either in the bond itself, or in a renewal certificate, the extent of liability thereunder may be determined or limited. See 7 A.L.R.2d 946.

Even in the absence of language limiting liability or excluding cumulative liability some courts have considered fidelity bonds and renewals thereof as continuous contracts with the result that the total liability is limited to the amount expressed in the original instrument. See Leonard v. Aetna Casualty & Surety Co., 80 F.2d 205 (CA 4—1935); John Church Co. v. Aetna Indemnity Co., 13 Ga.App. 826, 80 S.E. 1093 (1909).

Others, such as Krey Packing Co. v. Employers' Liability Assurance Corp., 127 S.W.2d 780 (Mo.App.1939) have reached the opposite conclusion and viewed each renewal as a separate contract, with the result of cumulative liability.

The plaintiffs rely heavily on the reasoning in *Krey*, emphasizing the fact that the original bond here, as in the *Krey* case, contains no provision relating to renewals or continuances of the original bond, and is for a definite term of one year. However, the instant case is factually distinguishable from that in *Krey* by virtue of the limitation provision found in the continuation certificates, which provisions were absent in *Krey*. As the Court there recognized:

"The effect of the continuation certificate with respect to a continuation, extension, or renewal of the bond must therefore be determined solely from the language of the certificate. If the aggregate liability of the defendant for the peculations of Vincent A. Gones occurring during the entire period of two years from the effective date of the bond to the date of the expiration of the certificate is to be limited to the sum of $1,000, such limitation must be found in clear and unambiguous terms within the four corners of the certificate." 127 S.W.2d at 782.

"Rulings made in cases involving policies or bonds which contained stipulations for renewals and such provisions as one stating that the named amount of insurance or indemnity was to cover losses occurring during the continuance of the policy or bond or any renewal thereof, or one stating that the liability of the insurer should not be cumulative, or one stating that the liability should not be for more than a stated sum, whether the loss occurred during the term of the policy or bond, or a continuance thereof, or other similar provisions, are not applicable to the facts of the instant case." 127 S. W.2d at 783.

Of all the decisions found relating to the issue here presented, the one most factually similar and persuasive is Nowell v. Monroe, 177 Ga. 648, 171 S.E. 136 (1933). There a bond covering a municipal officer contained no provision regarding renewal. Continuation certificates, expressly limiting the surety's liability to the penalty of the original bond, were issued for nine years. Losses exceeding the amount of the original bond occurred in each of several years. The Court, in dealing with the defendant's contention that the yearly renewal of the bond resulted in a new contract for each year, with annual increases in liability, observed that the weight of authority appeared to support such a view where the original bond contained no provisions as to renewal and the renewals were not accompanied by stipulations limiting liability to the original amount. However, the Court concluded that where the continuation certificate or other evidence relied upon as establishing a renewal necessarily entered into the construction of the transaction, it would govern if it contained a condition which could be construed only as an express limitation upon the liability of the insurer to the penal amount of the original bond, and that there was no opportunity for a construction establishing cumulative or increasing liability, for the reason that upon expiration of the original bond the insurer (as well as the em-

ployer) was free to name the terms of agreement for liability for another year.

The plaintiffs argue that under the interpretation reached by cases such as Nowell, an undetected loss exceeding the amount of the original bond in an early period of coverage could result in payment of premiums in subsequent years without resulting protection. At least one court has reached the same conclusion. See Aetna Casualty & Surety Co. v. Commercial State Bank, 13 F.2d 474 (E.D.Ill.1926), reversed on other grounds 19 F.2d 969 (CA 7—1927). Such an argument was answered perceptively by the Court in United States Fidelity & Guaranty Co. v. Barber, 70 F.2d 220 (CA 6—1934) wherein the Court stated:

"We cannot protect the insured against his own bad bargain, and, where the contract is clear and unambiguous, there is no room for construction." At 226.

Unfortunately, no reported Louisiana decisions have decided the issue here presented, although one case, Employers' Liability Assurance Corporation v. Southern Produce Co., Inc., 129 So.2d 247 (La.App.1961), citing 7 A.L.R.2d 946, did hold that a fidelity bond, effective for one year, renewed annually by the insurer's issuance of a continuation certificate, resulted in the creation of only one bond, rather than separate contracts for each year.

■ The finding of a continuous bond, rather than separate yearly contracts, as noted previously, is one of the factors which courts have relied on in holding liability to be non-cumulative under fidelity bonds such as the one here in question.

The plaintiffs do not contend that they were not aware of the language contained in the continuation certificates. Indeed it would be hard to conceive of such a situation, where it was the plaintiffs who actually paid the premium each of ten years for the renewal of the bond, as provided in the contract

between the Sheriff of East Baton Rouge Parish and the plaintiffs.

Plaintiffs do argue, however, that without the written consent of the principal (Sheriff) or the obligee (plaintiffs) the continuation certificate's language is without effect. This argument can hardly prevail. One cannot simply choose to ignore such a provision for ten years and then complain of a lack of consent to it. If the plaintiffs had any objection to the terms of renewal, there was certainly ample time in which to voice it. Further, the continuation certificates are necessary ingredients of proof in construing the contract between the parties. Without these certificates, there would be nothing upon which to find any fidelity insurance coverage in the years subsequent to 1961. If the Court is to consider such certificates, it must consider them as a whole and must take notice of the provisions contained therein as part of the contractual undertakings of the parties.

The result reached by this Court is not adverse to but is supported by La. Revised Statutes 22:635 which provides:

"Any insurance policy terminating by its terms at ₐa specified expiration date and not otherwise renewable, may be renewed or extended at the option of the insurer and upon a currently authorized renewal form and at the premium rate then required therefor for a specific additional period or periods by a certificate or by endorsement of the policy, and without requiring the issuance of a new policy."

That statute expressly authorizes the procedures followed by the defendant here in continuing the bond in question.

The Court is aware of the cases decided prior to the enactment of this statute which require the insurer to call attention to any changes in the terms of a policy upon its renewal in order for such changes to have effect. See Ouachita Parish Police Jury v. Northern Ins. Co. of New York, 176 So. 639 (La.App.1937); Crowell v. New Hampshire Fire Ins. Co., 147 So. 762 (La.App.1933). But these cases dealt with changes in terms of the policy itself, and particularly with changes in the coverage afforded. What is presented in the present case is not a change in the terms (or coverage) of the bond. It is far more reasonable to conclude that the continuation certificates and the language contained therein represent the terms upon which the parties agreed to continue the original bond coverage with no change in its terms except as to effective dates. As such, the language must be construed in its plain and unambiguous meaning as part of the contract between the parties.

The Court finds that the limitation of liability provisions of the continuation certificates were indeed effective, and that the total liability of the defendant surety is limited to the face amount of the original bond. That amount having previously been paid by the defendant to plaintiffs, judgment will be entered herein in favor of defendant, dismissing plaintiffs' suit.