417 So.2d 404 (1982)
STATE of Louisiana, Ex rel. William J. GUSTE, Jr., Attorney General, and Louisiana Department of Justice Office of Employment Security
v.
The AETNA CASUALTY AND SURETY COMPANY.
No. 14886.
Court of Appeal of Louisiana, First Circuit.
June 29, 1982.
Stephen J. Caire, Asst. Atty. Gen., New Orleans, for plaintiff-appellee William J. Guste, Jr., Atty. Gen., State of La. and Louisiana Dept. of Justice Office of Employment Sec.
Ray C. Dawson, Baton Rouge, for defendant-appellant The Aetna Cas. and Sur. Co.
Before LOTTINGER, EDWARDS and SHORTESS, JJ.
EDWARDS, Judge.
The Aetna Casualty and Surety Company, hereinafter Aetna, appeals a summary judgment in favor of plaintiff, the State of Louisiana, ex rel. William J. Guste, Jr., Attorney General, and the Office of Employment Security, hereinafter collectively OES. We affirm as amended.
*405 On September 15, 1970, OES purchased from Aetna a public employees blanket bond, number 48 F 387 BCA. Said bond, with a limit of liability of $15,000.00, was to protect OES against
"Loss caused to the Insured through the failure of any of the Employees, acting alone or in collusion with others, to perform faithfully his duties or to account properly for all monies and property received by virtue of his position or employment during the Bond Period, the amount of indemnity on each of such Employees being the amount stated in the Table of Limits of Liability applicable to this Insuring Agreement 4."
For each of the next five years, OES paid an annual premium, thereby continuing the bond in force through September 14, 1976. On September 15, 1976, OES and Aetna executed a rider increasing the limits of liability to $50,000.00. Coverage was terminated after September 14, 1977.
OES eventually discovered that an employee had misappropriated funds over a number of years. Stipulated to by Aetna and OES, the amounts stolen were, by year:

September 15, 1971 through September
 14, 1972 $ 6,469.80
September 15, 1972 through September
 14, 1973 15,000.00
September 15, 1973 through September
 14, 1974 12,075.85
September 15, 1974 through September
 14, 1975 7,745.15
September 15, 1975 through September
 14, 1976 15,000.00
September 15, 1976 through September
 14, 1977 26,609.16
 __________
Total $82,899.96

OES demanded $82,899.96 from Aetna. Aetna offered $41,609.16 in full payment of OES' claim. OES refused the offer, brought this action, and moved for summary judgment.
At trial of the motion for summary judgment, the only real issue was the meaning of certain terms in the blanket bond. Those terms provided as follows:
Declarations
Item 3. "Bond Period: from the beginning of September 15, 1970 to 12 o'clock night on the effective date of the cancelation or termination of this Bond as an entirety."
Conditions and Limitations
Limits of Liability
Section 4 (paragraph 3)
"Regardless of the number of years this Bond shall continue in force and the number of premiums which shall be payable or paid, the limit of the Surety's liability as specified in the Table of Limits of Liability shall not be cumulative from year to year or period to period."
OES urged that the bond period was ambiguous and that, with the payment of each annual premium, a new contract had been formed. On that basis, OES argued that the noncumulation clause could have no effect.
Aetna maintained that there was only one contract for one bond and that the subsequent premiums merely extended the coverage period during which Aetna's limitation of liability would remain at $15,000.00. Aetna conceded that its limitation of liability was raised to $50,000.00 for losses during the year September 15, 1976 through September 14, 1977.
The trial court found no ambiguity in the contract of insurance but did conclude that the noncumulation clause was against public policy because
"Once a defalcating employee converts funds in an amount exceeding the limits of liability stated in the bond, the defendant has no liability, even though the employer has continued to pay premiums to cover the faithfuly [sic] performance of that employee in succeeding years."
Striking the noncumulation clause, the trial court:
1. declared that the liability of Aetna was $15,000.00 for each and every year from September 15, 1970 through September 14, 1976, and $50,000.00 from September 15, 1976 through September 14, 1977,
2. cast Aetna for $82,899.96 plus interest,

*406 3. reserved to OES the right to bring claims unknown at the time of judgment, not to exceed the limits of liability as found by the court, and
4. assessed all costs against Aetna.
We agree with the district court that the contract was not ambiguous. Only one bond was issued, number 48 F 387 BCA. Each year OES paid annual premiums renewing the bond but not creating a new one. Even the rider increasing the limitation of liability to $50,000.00 stated in part:
"To be attached to and form part of Bond No. 48 F 387 BCA."
That both parties intended a single continuing bond is obvious from OES' memorandum in support of its motion for summary judgment which states, at page 5 (R-17):
"The intent of plaintiff in securing bond from defendant was to insure itself against losses as a result of the dishonesty of an employee. Further by the payment of an annual premium and the renewal of the bond each year it intended to be maintained in that coverage. The reason plaintiff continued to pay annual premiums and fill in the Application-Questionnaire without question was because it felt that this was the mutually agreed upon procedure to renew said bond. Such was the case in September 1976 when plaintiff executed a Rider against the bond to increase the coverage." (Emphasis supplied.)
Plaintiff attached numerous exhibits to the motion for summary judgment. Nothing indicates the existence of any bond other than 48 F 387 BCA. OES made no request that more than one bond be issued by Aetna. Clearly, only one continuous bond existed or was ever contemplated. Plaintiff's claim of multiple bonds arose only after an employee stole more than the limitation of liability required Aetna to repay.
While ambiguous contracts will be construed against the party drawing same, courts should not strain to find, against all the evidence, an ambiguity where none exists, merely to afford added insurance protection to a party which freely chose to purchase only limited coverage.
The trial court found Aetna's noncumulation clause to be against public policy and struck it from the contract. We find the clause not to be against public policy.
No Louisiana case is precisely in point, but a careful review of the national jurisprudence reveals that where the terms of a fidelity bond, taken as a whole, indicate an intention that the original bond shall be continued for a new period or periods due to the payment of a consideration, the contract is a continuous one and the extent of liability is to be determined by the provisions of the original bond. Parish of East Baton Rouge v. Fidelity & Casualty Company of New York, 373 F.Supp. 440 (M.D.La. 1974), affirmed without opinion 502 F.2d 783 (5th Cir. 1974). See also Eddystone Fire Company No. 1 v. Continental Insurance Companies, 284 Pa.Super. 260, 425 A.2d 803 (1981); Scranton Volunteer Fire Co. v. United States Fidelity and Guaranty Company, 450 F.2d 775 (2nd Cir. 1971); Columbia Hospital for Women and Lying-In Asylum v. United States Fidelity & Guaranty Co., 188 F.2d 654 (D.C.Cir.1951), cert. denied 342 U.S. 817, 72 S.Ct. 31, 96 L.Ed. 618 (1951); 7 A.L.R.2d 946 at 949.
The court in Columbia Hospital, supra, which contains a most scholarly discussion of the problem now confronting us, stated
"... The weight of authority is in favor of the surety companies, even where there has been no specific contract provision against cumulation of liability. It has generally been held that `where the bond is for an indefinite term, the date it begins to run being the only date given, the fact that the premiums were paid annually does not make the relation a series of separate yearly contracts.' ... Accordingly, even in the absence of a specific provision against cumulative liability, it has been held that the continuous term of the bond impliedly excluded liability in excess of the amount stated in the bond, in spite of the extent of actual losses over the years.... Where, as here, in addition to the continuous term *407 of the bond, there was language in the bond or its attachments which militated against a finding of cumulative liability, the courts have consistently held liability to be limited, in the aggregate, to the amount stated in the bond (i.e., non-cumulative)." 188 F.2d at 657. (Citations omitted.)
We find the foregoing case law to be most convincing. Clearly, the weight of authority is that noncumulation clauses are not against public policy elsewhere. We will not hold them so in Louisiana.
Aetna tendered $41,609.16 as payment. This, the proper amount, represents the sum of $15,000.00, stolen and payable under the bond's limit through September 14, 1976, and $26,609.16, stolen and payable under the bond's limit for the period of September 15, 1976, through September 14, 1977.[1]
For the foregoing reasons, it is adjudged, ordered and decreed that there be judgment in favor of the State of Louisiana through the Office of Employment Security and against the Aetna Casualty and Surety Company in the amount of $41,609.16 with legal interest only from the date of this judgment. Plaintiff's right to bring claims for amounts stolen, but as yet undiscovered, during the period from September 15, 1976 through September 14, 1977, and neither exceeding the bond's limits of liability nor prescribed by either law or contract is expressly reserved.
It is further adjudged, ordered and decreed that $244.77 in costs are assessed against the state, pursuant to LSA-R.S. 13:5112.
AFFIRMED AS AMENDED.
NOTES
[1] Had the sums stolen during the period of September 15, 1976, through September 14, 1977, amounted to more than $35,000.00, it would have been necessary to determine whether the $15,000.00 and $50,000.00 bond limits, applicable before and from September 15, 1976, respectively, might be cumulated or not. Such is not the case. Since we are, however, reserving to OES the right to bring additional claims for as yet undiscovered thefts occurring during the bond's final year of validity, the possibility exists that this situation might arise, at which time the district court will have to decide the issue.