429 So.2d 106 (1983)
STATE of Louisiana ex rel. William J. GUSTE, Jr., Attorney General, and Louisiana Department of Justice Office of Employment Security
v.
The AETNA CASUALTY AND SURETY COMPANY.
No. 82-C-1916.
Supreme Court of Louisiana.
February 23, 1983.
William J. Guste, Jr., Atty. Gen., Warren E. Mouledoux, Stephen J. Caire, Asst. Attys. Gen., for applicant.
Ray E. Dawson, Franklin, Moore & Walsh, Baton Rouge, for respondent.
DIXON, Chief Justice.
Plaintiffs, the State of Louisiana, ex rel. William J. Guste, Jr., Attorney General, and Louisiana Department of Justice, Office of Employment Security (hereinafter collectively OES), brought suit against the Aetna Casualty and Surety Company, seeking to recover, pursuant to a public employees' blanket bond, sums embezzled by one of its employees. The trial judge entered summary judgment in favor of the plaintiffs in the amount of $82,899.96 for losses incurred *107 during the years 1970 through 1977. The First Circuit Court of Appeal affirmed the judgment, but amended the award. The appellate court found that Aetna was liable for the losses but only to the extent of $41,609.16. 417 So.2d 404 (La.App.1982).
The evidence reveals that on September 15, 1970, Aetna entered into an agreement with OES to issue a public employees' blanket bond, No. 48 F 387 BCA. The insuring agreement provided for "faithful performance blanket position bond coverage" with liability limited to $15,000 per employee. In the bond Aetna agreed, "in consideration of the payment of the premium," to indemnify OES against:
"Loss caused to the Insured through the failure of any of the Employees, acting alone or in collusion with others, to perform faithfully his duties or to account properly for all monies and property received by virtue of his position or employment during the Bond Period to an amount not exceeding in the aggregate the amount stated in the Table of Limits of Liability applicable to this Insuring Agreement 4."
The insured was billed annually for the bond by an insurance agency, continuing the bond in force through September 14, 1976. On September 15, 1976, OES and Aetna executed a rider which increased the maximum liability from $15,000 to $50,000. The bond was not continued in effect after September 14, 1977 and was terminated at midnight on that date.
Subsequent to the termination of the bond, OES discovered that funds belonging to it had been misappropriated by one of its employes from 1972 to 1977. On or about October 20, 1978, OES submitted a proof of loss to Aetna for the alleged defalcations in the amount of $115,339.12. After investigation, Aetna tendered to OES a check for $41,609.16 as payment for the loss sustained by its insured. OES refused the offer of Aetna and sought a declaratory judgment for the amount of $91,815.19. Aetna answered the suit, denying liability in excess of the amount originally tendered to OES. OES then moved for summary judgment, alleging that there was no genuine issue as to material fact in this case. C.C.P. 966.
On July 24, 1981, the parties jointly stipulated to the amount of losses sustained by OES throughout the existence of the bond. The amounts stolen were agreed to by year:

 September 15, 1971 through
 September 14, 1972 $ 6,469.80
 September 15, 1972 through
 September 14, 1973 $15,000.00
 September 15, 1973 through
 September 14, 1974 $12,075.85
 September 15, 1974 through
 September 14, 1975 $ 7,745.15
 September 15, 1975 through
 September 14, 1976 $15,000.00
 September 15, 1976 through
 September 14, 1977 $26,609.16
 __________
 $82,899.96

At the hearing of the motion for summary judgment, counsel for both parties stipulated that no factual issues were in dispute. The primary issue contested was legal in nature, the interpretation of two provisions in the fidelity bond. These provisions read as follows:
"Declarations
. . . . .
Item 3. Bond Period: from the beginning of September 15, 1970 to 12 o'clock night on the effective date of the cancellation or termination of this Bond as an entirety.
. . . . .
The Foregoing Insuring Agreements and General Agreement are Subject to The Following Conditions and Limitations:
. . . . .
Limits of Liability Section 4.
. . . . .
Regardless of the number of years this Bond shall continue in force and the number of premiums which shall be payable or paid, the limit of the Surety's liability as specified in the Table of Limits of Liability shall not be cumulative from year to year or period to period."
Aetna took the position that its liability was clearly limited and defined by the language *108 contained in the bond. Based on these provisions, Aetna maintained that the bond must be interpreted as a single, continuous contract which prohibits cumulation of liability, and that the premiums merely extended the coverage period during which Aetna's maximum liability would remain at $15,000 per employee. Aetna conceded that for the period of September 15, 1976 to September 14, 1977, its limitation of liability was increased to $50,000 for losses occurring within this time frame.
At the hearing OES argued that these provisions of the bond were ambiguous and therefore should be construed against the insurer and in favor of the insured. Since the bond period was ambiguous, OES contended that the payment of the premiums resulted in the formation of a new contract for each year. Thus the clause prohibiting cumulation could have no effect.
The trial court held that the provisions of the bond were not ambiguous. Nevertheless, it found full coverage, reasoning that:
"... the bond provides that the limits of liability shall not be cumulated from year to year regardless of the number of years the bond is in effect, the amount converted, or the time period that the conversion occurred. Once a defalcating employee converts funds in an amount exceeding the limits of liability stated in the bond, the defendant has no liability, even though the employer has continued to pay premiums to cover the faithfuly (sic) performance of that employee in succeeding years. In that situation, which is the case at bar, the plaintiff has paid for coverage which is excluded by the terms of the bond. This result is clearly against public policy."
The court of appeal found that the annual premium payments had the effect of renewing the bond but not creating a new one. Only one continuous bond ever existed or was ever contemplated. In addition the appellate court concluded that the noncumulation clause was not against public policy and upheld the bond as written, finding that its provisions were not ambiguous.
The interpretation of fidelity bonds, particularly the extent of liability on a bond which is renewed periodically, has been the subject of much litigation. One line of authority construes a fidelity bond which is subject to annual premiums as a single, continuous contract where the maximum liability of the surety is limited to the specified amount stated in the bond, in spite of the extent of the losses over the years. See, e.g., Columbia Hospital for Women and Lying-In Asylum v. United States Fidelity & Guaranty Co., 88 U.S.App.D.C. 251, 188 F.2d 654 (D.C.Cir.1951), cert. denied, 342 U.S. 817, 72 S.Ct. 31, 96 L.Ed. 618 (1951); Parish of East Baton Rouge v. The Fidelity & Casualty Company of New York, 373 F.Supp. 440 (M.D.La.1974), affirmed without opinion, 502 F.2d 783 (5th Cir.1974); Town of Scotland Neck v. Western Surety Co., 301 N.C. 331, 271 S.E.2d 501 (1980). Other jurisprudence construes fidelity bonds subject to periodic premium payments as successive bonds. Each renewal is viewed as a separate and distinct contract for that year and thus is not a continuous bond. The surety is liable for the specified amount in the bond for each year if the losses in that year equal or are less than that amount. See, e.g., Middlesboro v. American Surety Co., 306 Ky. 367, 211 S.W.2d 670 (1948); Massachusetts Bonding & Insurance Co. v. Adams County Commissioners, 100 Colo. 398, 68 P.2d 555 (1937).
No Louisiana case has decided the issue here presented. In Parish of East Baton Rouge v. The Fidelity & Casualty Company of New York, supra, the federal district court, applying Louisiana law, upheld the limitation of liability provisions in the bond and limited the liability of the surety to the face amount of the original bond. The federal court acknowledged that there were no reported Louisiana decisions on point, although in one case, Employers' Liability Assurance Corp. v. Southern Produce Co., Inc., 129 So.2d 247 (La.App.1961), the court stated that "a fidelity bond, effective for one year, renewed annually by the insurer's issuance of a continuation certificate, resulted in the creation of only one bond, rather than separate contracts for each *109 year." Parish of East Baton Rouge v. The Fidelity & Casualty Company of New York, supra at 443. The Louisiana court had looked to the intent of the parties to determine the extent of liability, while the federal district court relied on the terms of the bond itself to find that there was no cumulative liability.
In this case the fidelity bond, originally issued in 1970, and renewal applications, completed in 1973 and 1976, were introduced into evidence. Other writings considered were the notices from the insurance agency that premiums were due, the rider issued on September 15, 1976 to increase coverage from $15,000 to $50,000 per employee, and "a verification certificate for indefinite term surety bond" dated September 15, 1973 and issued by Aetna. No allegation was made on any of these forms that the terms of the bond were changed from the original instrument, other than the increase in the maximum liability to $50,000. The rider increasing the amount of coverage was attached to the original bond issued in 1970. No separate renewal or continuation certificates replacing the original bond were issued. In those cases in which a separate renewal certificate was issued upon payment of the premiums, the bonds were usually construed as separate contracts. See, e.g., Miami Springs v. Travelers Indemnity Co., 365 So.2d 1030 (Fla.App. 1978), cert. denied, 376 So.2d 77 (Fla.1979); Krey Packing Co. v. Employers' Liability Assurance Corp., 127 S.W.2d 780 (Mo.App. 1939). Here Aetna merely issued a verification certificate acknowledging receipt of the premium from OES, and stating that the term "ends only with the cancelation of said bond, or other legal termination thereof."
The termination and cancelation provisions within the bond are relevant in determining the intent of the parties. The bond in this case contains no specific termination or cancelation date. Item 3 of the bond states that the coverage begins on September 15, 1970 and continues indefinitely until the suretyship is canceled or terminated. Section 6 of the bond provides the four methods by which the bond may be canceled. They are as follows: (1) discovery of any act of any employee by the insured which would constitute liability of the surety; (2) death, resignation, or removal of such employee; (3) written notice of cancelation thirty days in advance by the surety; and (4) written notice stating the effective date of cancelation by the insured. The termination by notice and not by a specified date implies a continuous contract. Leonard v. Aetna Casualty & Surety Co., 80 F.2d 205 (4th Cir.1935); Montgomery Ward & Co. v. Fidelity & Deposit Co., 162 F.2d 264 (7th Cir.1947).
No additional agreement was needed to extend the period of coverage of the bond. There was no requirement for the renewal of the bond upon payment of the annual premium, and no stipulation was contained in the bond that liability would cease if the annual premium was not paid. See Leonard v. Aetna Casualty & Surety Co., supra. Premiums were payable in advance.
In addition, the limitation upon the liability of the surety for losses incurred in a particular year did not become effective at the end of that year; rather the surety was liable for the losses incurred in that year for up to three years after the cancelation of the bond. The applicable provision states as follows:
"LEGAL PROCEEDINGS
Section 7. No suit, action or proceeding of any kind to recover on account of loss under this Bond shall be brought after the expiration of three years from the cancelation of this Bond as an entirety provided, however, that if such limitation for bringing suit, action or proceeding is prohibited or made void by any law controlling the construction of this Bond, such limitation shall be deemed to be amended so as to be equal to the minimum period of the limitation permitted by such law."
These terms and conditions of the bond lead to the conclusion that only one contract was effected by the parties. Only one bond was issued, Policy No. 48 F 387 BCA. The *110 bond clearly stated that it was valid "to 12 o'clock night on the effective date of the cancelation or termination of this Bond as an entirety." A premium was due annually to the insurance company,[1] but there was no provision for forfeiture or termination of the policy upon nonpayment. The bond states that "the Surety, in consideration of the payment of the premium, ... agrees... to indemnify the Obligee for the use and benefit of the Insured...." (Emphasis added).
"There is authority ... that under a contract of fidelity guaranty insurance, by which, in consideration of an initial premium and subsequent annual ones, the insurer undertakes to indemnify the insured against loss, and which contains no provision for forfeiture or termination upon nonpayment, the payment of the annual premium is to be enforced as part of the consideration and not as a condition, and the obligation of the contract is therefore continuous and single, and a new assent or affirmative action is not necessary to keep it in force, even on a failure to pay an annual premium; rather, the contract runs until affirmative action is taken to avoid it." Couch on Insurance 2d § 30:9, pp. 514-515.
The finding of a continuous bond, rather than separate yearly contracts, is one of the reasons courts have relied on in holding liability to be noncumulative under fidelity bonds like the present one. In this case the bond contains explicit, unambiguous non-cumulative clauses.[2] The plaintiffs argue that the provisions prohibiting cumulation are void as against public policy, since their enforcement results in the forfeiture of premiums already paid to the bonding company. The trial judge agreed with this argument and found that OES "paid for coverage which is excluded by the terms of the bond." He concluded that such a result was "clearly against public policy." The appellate court disagreed and upheld the non-cumulation provisions.
We find that the insured received consideration for the premiums paid on behalf of the defalcating employee, and that the provisions are not void as against public policy. The bond was continuous and provided total protection of only $15,000 per employee from September 15, 1970 through September 14, 1976, which was increased to $50,000 per employee from September 15, 1976 through September 14, 1977. This indefinite term fidelity bond with the non-cumulation clauses has at least two distinct advantages over a series of bonds, each for a fixed term of one year. In Scranton Volunteer Fire Co. v. United States Fidelity & Guaranty Co., 450 F.2d 775, 777 (2nd Cir.1971), the court described the advantages as:
"First, the insured need not prove the specific year in which the losses occurred, which is sometimes difficult, but only that the losses were sustained within the indefinite term of the bond. Second, the insured will not lose his protection for any particular year because he fails to discover the loss until after the bond for that year has expired and the contractual limitations period for filing claims on that bond has run, as may happen under a limited term bond."
No allegation was made that OES had a different understanding of the terms of the bond, at the time of its execution, than would be indicated by a fair reading of the bond certificate.
*111 We agree with the observation of the court in Columbia Hospital for Women & Lying-In Asylum v. United States Fidelity & Guaranty Co., 188 F.2d 654, 659-660 (D.C. Cir.1951), cert. denied, 342 U.S. 817, 72 S.Ct. 31, 96 L.Ed. 618 (1951):
"Policies or bonds such as the one here in issue may seem one-sided, and harsh upon the insured. Were there any ambiguity in the language, a construction imposing cumulative liability might have some basis. But, where the language is clear, in the absence of misrepresentation, the courts are not free to rewrite a commercial contract entered into at arm's length by fully competent parties. We cannot give the insured a new bond, different from the one he bought and paid for, and carrying greatly extended coverage. Perhaps such litigation as the instant case will serve as an admonition to purchasers of insurance to read their contracts carefully and to seek expert advice with regard to the scope of coverage. It may then appear that additional coverage is obtainable upon payment of higher premiums. Just as we are not free to rewrite the bond in a case such as this, we cannot attempt to require that any part of the premium be returned to the plaintiff. The premium charged covered a number of employees, and extended at least some measure of protection in respect of each member of the entire group. Even if we could break down the premium to ascertain the amount chargeable to coverage of a particular employee, still we would not find such a failure of consideration as would entitle the insured to full or partial return of the premium. The bargained protection, such as it was, has at all events been given." (Footnotes omitted).
For these reasons, the judgment of the court of appeal is affirmed.
WATSON, J., dissents.
NOTES
[1] From the record it appears that from the years 1970 to 1976 the premium due annually was $1287.00. When the liability was increased in 1976 to $50,000, the annual premium increased to $3573.00 per year.
[2] Paragraphs 2 and 3 of Section 4 are:

"Indemnification by the Surety for any loss under Insuring Agreement 2 or 4 shall not reduce the Surety's liability for other losses under the applicable Insuring Agreement, whenever sustained; provided, however, the Surety's total liability under each such Insuring Agreement as to each Employee is limited to the applicable amount of indemnity specified in the Table of Limits of Liability.
Regardless of the number of years this Bond shall continue in force and the number of premiums which shall be payable or paid, the limit of the Surety's liability as specified in the Table of Limits of Liability shall not be cumulative from year to year or period to period."