BAILEY BROWN, Senior Circuit Judge.
This appeal involves a dispute over the extent of coverage that a trustee’s bond provides to an estate in reorganization under Chapter X of the former Bankruptcy Act, 11 U.S.C.S. §§ 501-676 (repealed 1978). The main question presented for review is whether, under the circumstances presented here, the trustee’s bond is one continuous contract over the period of the trusteeship, so that the bonding company’s total liability is limited to the face amount of the bond, or, on the other hand, the bond is a separate contract for each year for which an additional premium is paid, so as to obligate the insurer to pay, up to the face amount of the bond, for the defalcations of the trustee in each year. An additional issue involves the bonding company’s rights as subrogee to the successor trustee’s claim against the *880 defalcating trustee. The bankruptcy court, acting on facts stipulated by the parties, found that the liability of the defendant-appellant bonding company was cumulative, requiring it to pay up to the face amount of the bond for the trustee’s defalcations for each year of his trusteeship. The bankruptcy court also rejected the defendant-appellant’s subrogation claim. The district court affirmed the bankruptcy court’s decision, and defendant-appellant appealed. We affirm the district court.
BACKGROUND
As noted above, the facts in this case were stipulated by the parties. One James H. Herzog was appointed trustee in the Chapter X reorganization proceedings involving Endeco, Inc., and its subsidiaries, Cavalier Estates, Inc., Environmental Development Corp., Inc. and Lincorp, Inc. Fidelity and Casualty Company of New York (Fidelity), defendant-appellant in this case, issued trustee fidelity bonds, payable to the United States of America, guaranteeing Herzog’s performance in each of the bankruptcy proceedings. The parties agree that Herzog breached his fiduciary duties to all of the estates, and that the successor trustee is entitled to some recovery on the bonds.[1] The bond for Endeco, Inc., dated September 21, 1973, was in the amount of ten thousand dollars; the bonds for each of the others were in the amount of five thousand dollars and dated October 11, 1973. The bonds Fidelity issued were approved by order of the bankruptcy judge and the initial year’s premium paid forthwith. The bonds contained no language proscribing cumulative liability with respect to future years as additional yearly premiums were to be paid. Fidelity did, however, upon the anniversary dates of the bonds in 1974, 1975, 1976 and 1977, mail to Herzog a certificate of continuation which included a statement of annual premium due, containing the following provision:
A premium in the amount set forth below will become due on the first date shown for the term indicated. This premium is paid and is accepted upon the express stipulation that the liability of the Company under the bond herein described shall not be cumulative, and that in no event shall the aggregate liability of the Company for any one or more defaults of the Principal, during any one or more years of the suretyship under the said bond, as extended by this or any other extension of the terms thereof, exceed the amount set forth in said bond or any existing certificate changing the amount of said bond.
Herzog received these continuation certificates and paid the requested premiums. Copies of the continuation certificates were filed with the bankruptcy court, but the bankruptcy judge did not approve them, and there is no evidence that he had actual knowledge of the limitation.
I.
The issue of bonding companies’ liability on renewed bonds has been an area of some disagreement among the courts. As noted by the parties and reflected by the bankruptcy court’s opinion, there is little North Dakota law in this area.[2] But the case of Parish of East Baton Rouge v. Fidelity & Cas. Co. of N.Y., 373 F.Supp. 440 (M.D.La.), aff’d, 502 F.2d 783 (5th Cir.1974), sets out some generally accepted principles useful in deciding the issue. In determining the Louisiana law in this diversity case, the court set out the following guidelines:
The rule generally recognized is that a renewal of a fidelity policy or bond constitutes a separate and distinct contract, for the period of time covered by such renewal, unless it appears to be the intention of the parties, as evidenced by the provisions thereof, that such policy or bond and renewal thereof shall constitute *881 one continuous contract. 25 C.J. 1109 § 16.
and
Under the view usually taken of renewals it has been held that the insurer’s liability is not limited to the amount named in the original fidelity contract, but that there is a liability for the amount fixed by such original contract for a loss occurring during its life. When, however, as may be the case, a fidelity policy or bond and the renewals thereof are intended by the parties to constitute one continuous contract, the liability of the insurer is limited to the sum named in the original bond. 25 C.J. 1110 § 16.
and
The extent of liability of the company-under a contract of fidelity insurance depends on the terms of the contract. While the general rule that contracts of insurance, where they are ambiguous, will be construed against the company applies, nevertheless the liability of the company cannot be extended beyond the terms of the contract. 45 C.J.S. Insurance § 980.
Parish of East Baton Rouge, 373 F.Supp. at 442. See also Massachusetts Bond. & Ins. Co. v. Julius Seidel Lbr. Co., 279 F.2d 861 (8th Cir.1960), and 17 Couch on Insurance, § 68:47 (2d ed. 1966).
Our task is to give effect, following the above principles, to the entire bond contract issued and renewed by Fidelity. The principal question is whether the provision of the renewal certificates which purported to limit Fidelity’s liability was part of the contract.
Fidelity argues that the holding in Parish of East Baton Rouge should control our decision here. In that case a bonding company issued a bond to insure the faithful performance by the parish sheriff of his duties as tax collector. The bond, in the amount of $50,000.00, was issued in January 1961 to cover the period until January 1962. The bond remained in effect until January 1972, being renewed annually by means of a continuation certificate which contained language expressly stating that the company’s liability under the bond was not cumulative but limited to the face amount of the bond.[3] During the years 1968, 1969 and 1970, a total of $180,000.00 of tax revenue was stolen by a member of the sheriff’s office. The parish filed a claim for $150,-000.00, arguing that there was a separate contract for $50,000.00 for each of the 3 years involved. The bonding company contended that, through the provision in the continuation certificates, its liability was limited to the face amount of the bond. The court noted that the parish, the obligee, did not contend that it was unaware of the limiting provisions in the continuation certificates. The court found further that the parish almost surely did know of the provision since it, not the sheriff, paid the renewal premiums. Under these circumstances, the court held that the limiting provision of the continuation certificates was a part of the bond contract so that the bonding company’s liability over the entire coverage period was limited to the face amount of the bond.
We find the Parish of East Baton Rouge case distinguishable from the case sub judice. In that case, the limiting language in the continuation certificate was brought to the obligee’s attention by the fact that it paid the renewal premiums. In paying the premiums, the obligee at least implicitly agreed to the renewal terms. In the instant case, however, the premiums were paid by Herzog, the principal, not the obligee. Although the continuation certificates were filed with the bankruptcy court, there is no evidence that the judge, acting for the obligee, the United States, for the benefit of the estates, ever knew of, much *882 less approved, the limiting provision in the renewal certificates. We find, therefore, that the limiting provision of the renewal certificates was not part of the contract.
We believe that our interpretation of the bond contract is not only correct under the facts presented here but also agrees with the dictates of common sense. If liability on the bond were not considered cumulative, there may well have been no reason for additional premium payments in successive years. For if it is determined, as is contended, that Herzog’s defalcations in the first year equalled or exceeded the amounts of the bonds, the additional premiums would have been paid for nothing.
Other courts have noted the incongruity of interpreting a renewed fidelity bond as one continuous contract. In United States v. Am. Surety Co. of N.Y., 172 F.2d 135 (2d Cir.1949), the court reviewed several cases in which cumulative liability was found:
[T]he courts which find cumulative liability seem to be more impressed by practical considerations. ‘We are the more persuaded to this view by the improbability that a practical business concern * * * would pay one company two premiums for a single right of recovery if it could by payment of the same sum to two separate insurance carriers procure recoverable insurance for two periods.’ Standard Accident Ins. Co. v. Collingdale State Bank, 3 Cir., 85 F.2d 375, 376. In Aetna Casualty & Surety Co. v. Commercial State Bank of Rantoul, D.C.E.D.Ill., 13 F.2d 474, 476, reversed on other grounds, 7 Cir., 19 F.2d 969, the court asks the pertinent question, ‘What did he [the obligee] buy the second year?’ and concludes that he must have bought a new contract of insurance. In Maryland Casualty Co. v. First Nat. Bank of Montgomery, Ala., 5 Cir., 246 F. 892, 900, certiorari denied 246 U.S. 670, 38 S.Ct. 345, 62 L.Ed. 931, the court points out that the renewal premium was equal in amount to the initial premium, and that therefore it should provide equal coverage, without diminishing the coverage for undiscovered defalcations in the previous period.
172 F.2d at 138.
Finally, we are aided in our conclusion by North Dakota law that at least touches on this subject. In Giese v. Engelhardt, 175 N.W.2d 578 (N.D.1970), the North Dakota Supreme Court ruled that a surety bond on a securities dealer imposed cumulative, annual liability on the issuing surety. Although the decision was based on interpretation of the statute requiring the bond, the state court did note with approval the holding in Am. Surety Co. of N.Y., supra. Therefore, even though the state court has not ruled directly on the issue before this court, we believe that our decision, as nearly as can be determined, is in accord with the law of North Dakota.
We recognize, of course, that the courts cannot save a party from a bad bargain. United States Fidelity & Guaranty Co. v. Barber, 70 F.2d 220, 226 (6th Cir.1934). In this case, however, the provision purporting to proscribe cumulative liability is not part of the bargain. Consequently, Fidelity is liable, up to the face amount of the bonds, for Herzog’s defalcations in each year in which the bond was in force.
II.
We find no merit in Fidelity’s contention that it has a subrogation interest entitling it to a first right in any recovery made by the successor trustee from Herzog, the defalcating trustee. On this question, one authority has written: “[I]t has been held that under an official bond, there is no right of subrogation in the surety until the creditors have obtained payment from the principal of the surety of not merely the penalty but of the debtor’s entire obligation.” 2A Collier on Bankruptcy 150.09(2) (14th ed. 1978); see also Illinois Surety Co. v. United States, 226 F. 665 (7th Cir.1915). The bankruptcy court correctly disposed of Fidelity’s contention as follows:
While Fidelity may be entitled to indemnification from Herzog, to permit Fidelity to recover its payments on the bonds from the first monies recovered by the *883 estates from the judgments against Herzog would render meaningless any payment made on the bonds. Fidelity’s obligation on the bonds remains until the estates have been made whole from Herzog’s defalcations. R-59.
The judgment of the district court is, therefore, Affirmed.

. The parties agreed that if it was determined that Fidelity’s liability was cumulative, the amount of liability for each year could be determined at a subsequent trial.

. The parties appear to agree that North Dakota law would be applicable.

. The bond stated: “This premium is paid and is accepted upon the express stipulation that the liability of the Company under the bond herein described shall not be cumulative, and that in no event shall the aggregate liability of the Company for any one or more defaults of the Principal, during any one or more years of the suretyship under the said bond, as extended by this or any other extension of the term thereof, exceed the amount set forth in said bond or any existing certificate changing the amount of said bond.” 373 F.Supp. at 441.