[No. B077598. Second Dist., Div. Seven. May 19, 1995.]

A.B.S. CLOTHING COLLECTION, INC., Plaintiff and Appellant, v.
HOME INSURANCE COMPANY, Defendant and Respondent.

## Counsel

Revere, Rykoff & Wallace, Frank Revere, Timna Horowitz and Janette S. Bodenstein for Plaintiff and Appellant.

David T. DiBiase and Gary J. Valeriano for Defendant and Respondent.

## Opinion

## JOHNSON, J.—

### Introduction

This breach of contract action by a policyholder against its insurance company raises the following question. When an employee embezzles funds from an employer over a period of years during which the employer carries insurance against employee dishonesty from the same insurer, may the employer recover up to the insurer's limit of liability for each year in which the embezzlement occurs?

This is a question of first impression in California. Courts in other jurisdictions have generally held if coverage is based on a series of separate, independent contracts, then the employer is entitled to recover up to the limit of liability for each policy period in which a loss occurs. On the other hand, if there is but one continuous contract, then the employer's recovery cannot

exceed the limit of liability stated in the contract regardless of the number of years the coverage has been in force, the number of policies issued or the number of premiums the employer has paid.

In this action the trial court determined in summary judgment proceedings the policies issued to the employer over a period of years constituted one continuous contract under which the insurer's liability was noncumulative. Therefore, the insurer's liability did not exceed an amount equal to its liability for one policy period. It was undisputed the insurer had paid the insured an amount equal to its liability for one policy period. Therefore, the trial court held the insurer had not breached the contract and was entitled to summary judgment.

We have determined the trial court applied the correct legal principles to this case. However, upon independent review of the policy provisions contained in the record (*National Union Fire Ins. Co* v. *Lynette C.* (1991) 228 Cal.App.3d 1073, 1077 [279 Cal.Rptr. 394]), we have concluded those provisions do not support a finding the policies constituted one continuous, noncumulative contract. Therefore, it was error to enter summary judgment for the insurer.

### FACTS AND PROCEEDINGS BELOW

Plaintiff, A.B.S. Clothing Collection, Inc. (A.B.S.) is a corporation engaged in the manufacturing and sale of clothing. In 1989 A.B.S. contracted with defendant Home Insurance Company (Home) for commercial insurance, including commercial crime coverage which indemnifies A.B.S. for losses resulting from employee dishonesty.

The original policy issued by Home provided a "policy period" of April 4, 1989, to April 4, 1990, and a $100,000 limit of liability for loss under the crime coverage. Home issued two subsequent policies covering policy periods from April 4, 1990, to April 4, 1991, and April 4, 1991, to April 4, 1992. Each policy stated it was a "renewal of" the preceding policy and carried a different policy number. Except for the policy periods and policy numbers the provisions of each policy were identical, so far as we can tell from the record. A.B.S. paid an annual premium for the crime coverage. The premium for the last two policy periods was $1,675.

In May 1991, A.B.S. presented a claim to Home under its crime coverage. The claim showed that between July 1988 and May 1991 two employees had stolen a total of at least $1.4 million from an A.B.S. checking account. The yearly breakdown of the loss was:

April 4, 1988, to April 4, 1989: $100,692.27

April 4, 1989, to April 4, 1990: $557,636.97

April 4, 1990, to April 4, 1991: $779,388.45

April 4, 1991, to April 4, 1992: $ 78,181.62

Home acknowledged the validity of A.B.S.'s claim and issued a draft in the amount of $100,000 which it contended represented the limit of its liability under the employee dishonesty coverage.

A.B.S. disputed Home's interpretation of its liability and contended Home was liable up to its limit of liability of $100,000 for each policy period coverage was in effect as well as for the year preceding the original policy under the extension of coverage provisions contained in that policy. Thus, according to A.B.S., Home was liable for $378,181.62 calculated as follows: $100,000 for the 1988-1989 policy period, $100,000 for the 1989-1990 policy period, $100,000 for the 1990-1991 policy period and $78,191.62 for the 1991-1992 policy period.

As a result of this dispute over the extent of Home's liability, A.B.S. initiated this action for breach of contract and tortious breach of contract.

Home moved for summary judgment on the ground it had not breached its contract with A.B.S. because the unambiguous provisions of its contract limited its liability to the sum of $100,000 regardless of the number of years the coverage was in force, the number of policies issued or the number of premiums paid. The trial court determined there were no material questions of fact, there was no ambiguity in the coverage provisions regarding Home's limit of liability, and Home's construction of the limit of liability provision was correct as a matter of law. Home's motion for summary judgment was granted and a judgment was subsequently entered in favor of Home. A.B.S. appealed from the judgment.

## DISCUSSION

I. *An Insurer Seeking to Limit the Amount of Its Liability to the Insured for Losses Incurred During Successive Years of Coverage Must Show by Clear and Unambiguous Policy Language That the Parties Intended to Enter Into One Continuous Contract.*

The question whether an insured is entitled to recover the limit of liability for each year a fidelity policy is in effect, when an employee's dishonesty

takes place in each year, has been the subject of decisions in other jurisdictions since at least 1896. (*De Jernette* v. *Fidelity & Casualty Co.* (Ky.Ct.App. 1896) 33 S.W. 828, 830.) Remarkably, it has taken nearly a century for this question to reach a California appellate court. This long delay, however, has provided us with a wealth of case law on which to draw for an answer.

The courts which have addressed the question have approached it from a consideration of the nature of the obligation assumed by the insurer: whether the indemnity afforded is based on separate and distinct contracts for each year involved or is based on a single continuous contract of insurance which remains in effect until cancelled by one of the parties. Over the years, the rule has developed " 'that a renewal of a fidelity policy or bond constitutes a separate and distinct contract for the period of time covered by such renewal unless it appears to be the intention of the parties as evidenced by the provisions thereof that such policy or bond and the renewal thereof shall constitute one continuous contract.' " (*City of Miami Springs* v. *Travelers Indem. Co.* (Fla.Dist.Ct.App. 1978) 365 So.2d 1030, 1032, quoting from *Krey Packing Co.* v. *Employers' Liability Assur. Corp.* (Mo.Ct.App. 1939) 127 S.W.2d 780, 782; accord, among others, *Great American Indemnity Co.* v. *State* (Tex.Civ.App. 1950) 229 S.W.2d 850; *Massachusetts Bonding & Ins. Co.* v. *Board of Co. Com'rs* (1937) 100 Colo. 398 [68 P.2d 555, 556].)

Where indemnity is afforded through separate and distinct contracts for specific policy periods the insurer is generally held liable up to its limit of liability for each policy period. (E.g., *White Dairy Co.* v. *St. Paul Fire and Marine Insurance Co.* (N.D.Ala. 1963) 222 F.Supp. 1014, 1017-1018; *City of Miami Springs* v. *Travelers Indem. Co., supra*, 365 So.2d at p. 1031; *Great American Indemnity Co.* v. *State, supra*, 229 S.W.2d at p. 853.) On the other hand, where the terms of the contract, taken as a whole, establish an intention the policy be continued indefinitely, subject to the payment of an annual premium, the contract is a continuous one and the insurer's limit of liability is the amount stated in the contract regardless of the number of years involved or number of premiums paid. (E.g., *Columbia Hospital* v. *United States Fidelity & G. Co.* (D.C. Cir. 1951) 188 F.2d 654, 657 [88 App.D.C. 251]; *United States Fidelity & Guaranty Co.* v. *Barber* (6th Cir. 1934) 70 F.2d 220, 226; *Scranton Volunteer Fire Co.* v. *United States F. & G. Co.* (2d Cir. 1971) 450 F.2d 775, 776; *Santa Fe General Office Credit Union* v. *Gilberts* (1973) 12 Ill.App.3d 693 [299 N.E.2d 65, 71].)

It has been argued determining the limit of an insurer's liability on the basis of whether the contract is "separate" or "continuous" produces unfair results in the case of the insured whose contract is continuous. Suppose, for example, employers A and B have identical coverage, identical policy limits

of $100,000 and suffer identical losses of $100,000 each year for four years as the result of employee dishonesty. Suppose, further, each employer first discovers its loss in the fourth year. Employer A, whose contract is deemed "continuous," would recover only $100,000 of its $400,000 loss. Employer B, which had a separate contract in each year a loss occurred, would recover its full loss of $400,000. Furthermore, because employer A suffered a loss of $100,000 in the first year coverage was in effect but did not discover this loss until the fourth year, employer A made premium payments for three years for coverage which in fact did not exist. Employer A, it appears, would have been better off if it had placed its coverage with different insurance companies each year. (See *In re Endeco, Inc.* (8th Cir. 1983) 718 F.2d 879, 882; *Columbia Hospital* v. *United States Fidelity & G. Co.*, *supra*, 188 F.2d at p. 600 (Clark, J., dis.); *White Dairy Co.* v. *St. Paul Fire and Marine Insurance Co.*, *supra*, 222 F.Supp. at p. 1018.)

This apparent unfairness, however, is ameliorated to some extent by other considerations.

Some courts have noted contracts for employee fidelity coverage are commercial transactions entered into at arm's length usually by sophisticated business persons who cannot be heard to complain they made a bad bargain (*United States Fidelity & Guaranty Co.* v. *Barber*, *supra*, 70 F.2d at p. 226; *Columbia Hospital* v. *United States Fidelity & G. Co.*, *supra*, 188 F.2d at p. 659) especially when they may have bargained for a lower limit of liability under the policy in return for a lower premium (*id.* at p. 660; *State* ex rel. *Guste* v. *Aetna Cas. & Sur. Co.* (La.Ct.App. 1982) 417 So.2d 404, 406; *Santa Fe General Office Credit Union* v. *Gilberts*, *supra*, 299 N.E.2d at pp. 71-72.)

Other courts have pointed out the bargain for a continuous contract is not as one-sided as it might first appear. Under a continuous contract, the insurer remains liable throughout the entire term of the contract. This means the insurer is liable for the policy limit even though this total is reached by adding amounts embezzled over a period of years. The insured need not prove the loss occurred in any particular year so long as it can establish the loss took place while the policy was in effect. If the insured took out a new policy with a different company each year, it would have to prove the exact time when a particular loss occurred so as to place it under the coverage of the policy issued for a specific year. The insured might fail to recover altogether if it did not discover and report the loss under a particular policy within the period specified in that policy. In contrast, under a continuing contract the period for discovering and reporting losses follows the total period during which the contract has been in effect. (*Columbia Hospital* v. *United States Fidelity & G. Co.*, *supra*, 188 F.2d at p. 657; see also *Scranton Volunteer Fire Co.* v. *United States F. & G. Co.*, *supra*, 450 F.2d at p. 777.)

It can also be argued important public policy interests are served by denying an employer the right to recover the policy limit for each year a loss occurs through employee dishonesty. Such a limitation on the employer's recovery encourages the employer to take steps to prevent losses through employee dishonesty and to promptly discover dishonesty if it occurs. Taking steps to reduce losses allows insurers to hold down insurance rates and, indirectly, reduces the cost of the employer's goods or services to the public.

Notwithstanding the arguable benefits of a continuous contract, courts generally have recognized affording a recovery equal to only one year's policy limit when the insured has paid several years' premiums is contrary to the insured's reasonable expectation of coverage. (*In re Endeco, Inc.*, *supra*, 718 F.2d at p. 882; *Penalosa Co-Op* v. *Farmland Mut. Ins.* (1990) 14 Kan.App.2d 321 [789 P.2d 1196, 1200]; *Standard Acc. Ins. Co.* v. *Collingdale State Bank* (3d Cir. 1936) 85 F.2d 375, 376; *Hood* v. *Simpson* (1934) 206 N.C. 748 [175 S.E. 193, 199].) Therefore, courts will not limit the insurer's liability for losses incurred during successive years of its own coverage unless there is clear and unambiguous language showing the parties intended to enter into one continuous contract. (*Scranton Volunteer Fire Co.* v. *United States F. & G. Co.*, *supra*, 450 F.2d at p. 776; *Columbia Hospital* v. *United States Fidelity & G. Co.*, *supra*, 188 F.2d at pp. 657, 659; *United States Fidelity & Guaranty Co.* v. *Barber*, *supra*, 70 F.2d at p. 226; *White Dairy Co.* v. *St. Paul Fire and Marine Insurance Co.*, *supra*, 222 F.Supp. at p. 1016; *State* ex rel. *Guste* v. *Aetna Cas. & Sur. Co.*, *supra*, 417 So.2d at p. 406.

II. ██ *On the Record Before Us, the Home Policies Do Not Contain Clear and Unambiguous Language Showing the Parties Intended to Enter Into One Continuous Contract.*

The principles governing interpretation of insurance contracts are familiar and well settled. ██ Words used in the contract are ordinarily given their common and popular meaning. Each clause of the contract must be considered with reference to every other relevant clause and the clauses construed together in order to ascertain the intent of the parties. Similarly, in construing the meaning of a specific policy provision we do not view the provision in isolation but in the context of other relevant policy provisions. If the policy language is clear and explicit, it governs. If, on the other hand, the provision is susceptible to two or more reasonable constructions, it must be construed in accordance with the objectively reasonable expectations of the insured. Finally, if applying the foregoing rules does not eliminate or resolve any alleged ambiguity, the ambiguity is resolved against the insurer in favor

of liability under the policy. (*La Jolla Beach & Tennis Club, Inc.* v. *Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37 [36 Cal.Rptr.2d 100, 884 P.2d 1048].)

With these principles in mind we turn to the provisions of the Home policies as contained in the record before us.

A. ■ *Neither the "Non-cumulation" Nor "Prior Loss" Provisions Support a Finding of Intent to Enter Into a Continuous Contract.*

Each policy Home issued contained a "non-cumulation" clause providing: "Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period."

In addition, the policies contained two "prior loss" provisions. The first, which applied to policies issued by other companies, provided for coverage of loss due to employee dishonesty sustained under any prior insurance if the loss would have been covered under the present policy, the time in which to discover the loss under the prior insurance has expired and there was no lapse in coverage. Insurance under this provision "is part of, not in addition to," the limit of the present policy. The second "prior loss" provision, which applied to policies issued by Home or any of its affiliates, provided: "If any loss is covered: (a) Partly by this insurance; and (b) partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you . . . the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance."

Home contends the "non-cumulation" provision by itself, or in combination with the "prior loss" provisions, shows a clear and unambiguous intent the several policies issued to A.B.S. constitute one continuous contract. We disagree.

Courts called upon to construe "non-cumulation" clauses similar to the one in Home's policies have found them ambiguous at best. While the clause might be construed to mean the insurer's liability is limited to a maximum aggregate amount, it can also reasonably be read to mean the limit of liability in one policy year cannot be carried over and added to the limit of liability in the succeeding policy year; nor can a loss in excess of the policy limit in one year be carried over and applied against the limit of liability in a succeeding year. (*Columbia Heights Motors* v. *Allstate Ins. Co.* (Minn. 1979) 275 N.W.2d 32, 36; *Penalosa Co-Op* v. *Farmland Mut. Ins., supra,* 789 P.2d at p. 1200; *City of Miami Springs* v. *Travelers Indem. Co., supra,* 365 So.2d at pp. 1031-1032; *Great American Indemnity Co.* v. *State, supra,*

229 S.W.2d at p. 853.) Under the latter interpretation, if A.B.S. employees embezzled $125,000 in the first policy year, $150,000 in the second policy year and $25,000 in the third policy year the limitation against cumulative liability would prevent the carrying forward of the excess of $25,000 from the first year and $50,000 from the second year in order to claim the full policy limit of $100,000 in the third year.

Interpreting the "non-cumulation" clause to prohibit loss carryover from one policy period to the next is consistent with the ordinary meaning of the word "cumulate." The American Heritage Dictionary defines "cumulate" as "To gather in a heap . . . . To combine into one unit, merge." (American Heritage Dict. (2d college ed. 1982) p. 348.) Thus, the liability for employee dishonesty cannot be carried over from one period to the next. It may not be allowed to "cumulate," i.e., to heap or combine into one unit.

A "non-cumulation" clause nearly identical to the one in the Home's policies was determined to be ambiguous in *Cincinnati Ins.* v. *Hopkins Sporting Goods* (Iowa 1994) 522 N.W.2d 837, 838. The clause stated: " 'Regardless of the number of years this endorsement shall continue in force and the number of premiums which shall be payable or paid, the Company's total limit of liability shall not be cumulative from year to year or period to period.' "

The insurer contended this clause meant its $15,000 limit of liability applied no matter how many years the policy was in effect. The insured argued it was entitled to coverage of up to $15,000 per year for every year the policy was in effect. In upholding a declaratory judgment in favor of the insured, the Iowa Supreme Court concluded "[The] clause, especially the word 'cumulatively,' can be interpreted as supporting the position either of Cincinnati or Hopkins. Case authority supports both interpretations. . . . [¶] The view favoring Hopkins' understanding, though perhaps not more persuasive, is, again, plausible." (*Cincinnati Ins.* v. *Hopkins Sporting Goods*, *supra*, 522 N.W.2d at pp. 839-840.) Applying the rule if words of an insurance policy are susceptible to two interpretations, the interpretation favoring the insured must be adopted, (*id.* at p. 839) the court affirmed the judgment for the insured on this issue.

Another "non-cumulation" clause nearly identical to the one here was at issue in *Columbia Heights Motors* v. *Allstate Ins. Co.*, *supra*. That clause provided: " ' "Regardless of the number of years this form shall continue in force and the number of premiums which shall be payable or paid, the limit of Allstate's liability as specified in the Table of Limits of Liability in the Schedule shall not be cumulative from year to year or period to period." ' " (275 N.W.2d at p. 35.) The court held the insured's interpretation of this

clause "would appear to be the more reasonable" and that the clause "would appear to prevent cumulation of any portion of the $25,000 annual limit unpaid in previous years." (*Id.* at p. 36.)

The cases relied on by Home are distinguishable from the present case. In two of the cases the courts found the insurance contracts were continuous because they had no expiration date. (*Columbia Hospital* v. *United States Fidelity & G. Co.*, *supra*, 188 F.2d at p. 656; *Santa Fe General Office Credit Union* v. *Gilberts*, *supra*, 299 N.E.2d at p. 79.) The Home policies, by contrast, had specific beginning and ending dates of coverage. In the third case relied on by Home, one bond was issued and renewed from year-to-year by payment of an annual renewal premium. (*State* ex rel. *Guste* v. *Aetna Cas. & Sur. Co.*, *supra*, 417 So.2d at p. 406.) The court in that case also relied on extrinsic evidence of the insured's intent to enter into one continuous contract. (*Ibid.*) Here, Home issued three separate policies, and there is no extrinsic evidence of the parties' intent to enter into one continuous contract. Furthermore, although "non-cumulation" clauses were present in the policies considered in these cases, their presence was not a controlling factor in the courts' decisions. Indeed, as noted in *Columbia Hospital*, these cases would have been decided the same way even in the absence of a "non-cumulation" clause. (188 F.2d at p. 657.)

We have found only one case in which a "non-cumulation" clause was held sufficient *by itself* to limit the insurer's liability to an aggregate amount regardless of the number of years coverage was in effect. (*Graphic Arts Mut. Ins.* v. *C.W. Warthen* (1990) 240 Va. 457 [397 S.E.2d 876, 877].) The court arrived at its holding without any discussion of the authorities to the contrary or any independent analysis. We decline to follow it.[1]

Relying on *Kavaney Realtor* v. *Travelers Ins.* (N.D. 1993) 501 N.W.2d 335, 341-342, Home argues the combination of a "non-cumulation" clause and "prior loss" provisions is sufficient to support a finding the parties intended a continuous contract of insurance.

In *Kavaney*, the insurer issued three separate policies effective for specific periods. Each policy had "non-cumulation" and "prior loss" provisions. The noncumulation clause was different from the one included in the Home

---

[1]*State* ex rel. *Guste* v. *Aetna Cas. & Sur. Co.* (La. 1983) 429 So.2d 106 does not support Home's position. The court in that case did not address the question whether the noncumulation clause was ambiguous but accepted the insurance company's interpretation for purposes of deciding whether, if so interpreted, the clause violated public policy. (*Id.* at pp. 110-111.) The court upheld the clause against a challenge on public policy grounds, relying on the analysis contained in the *Scranton* and *Columbia Hospital* cases discussed, *ante*, at page 1477.

policies. It provided " 'Regardless of the number of years this form shall be in force, The Travelers' *total limit of liability* shall not be cumulative.' " (501 N.W.2d at p. 341, italics added.)[2] The "prior loss" provisions, however, were similar to those in the Home policies before us and thus deserve further analysis.

The "prior loss" provision applicable to policies issued by Travelers or its affiliates covered losses where the previous policy had expired but the discovery period for bringing a claim under that policy had not expired. This provision also stated the liability of the Travelers Companies shall not exceed in the aggregate the limit under the prior policy or the current policy whichever is greater. The "prior loss" provision applicable to policies issued by companies other than Travelers covered losses where both the previous policy and the discovery period under that policy had expired, there had been no lapse in coverage between the previous policy and the current one, and the loss would have been recoverable under the current policy if it had been in effect when the acts causing such loss occurred. Recovery under this provision could not exceed the limit applicable to the previous policy or the current policy, whichever was smaller. (501 N.W.2d at p. 341.)

Relying principally on the "prior loss" provision applicable to policies issued by companies other than Travelers, the *Kavaney* court reasoned, "The combination of the provision against cumulation of coverage and this provision, extending coverage to prior losses, indicates the intention that the policies constitute one continuous and noncumulative contract." (501 N.W.2d at p. 342.)

We find *Kavaney*'s reasoning questionable for several reasons.

The "prior loss" provision applicable to policies issued by other companies *only* applied if the loss would have been covered under the Travelers' policy had it been in effect at the time the loss occurred. (501 N.W.2d at p. 341.) In other words, if the terms of coverage under the previous policy would have covered a loss which the Travelers' policy would *not* have covered had it been in effect at the time then the prior loss would *not* be covered under the Travelers' policy. Furthermore, even if the insured would have had coverage for the prior loss under the terms of the Travelers' policy, if the limit of liability under the previous policy was lower than the limit of liability under the current Travelers' policy the insured's recovery would be

---

[2]A.B.S. contends *Kavaney* is distinguishable from the present case because the "non-cumulation" clause in the Travelers' policies, unlike the Home policies, referred to the insurer's "total limit of liability" "regardless of the number of years this [insurance] shall be in force." We need not decide whether a reference to "total" liability would remove the ambiguity in Home's "non-cumulation" clause.

limited to the lower amount. In our view, these limitations are inconsistent with an intent the previous policy and the current Travelers' policy constitute one continuous contract.

Assuming, however, this "prior loss" provision is susceptible to the interpretation given it by the *Kavaney* court, it is also reasonably susceptible to an interpretation the insured's intent was simply to purchase "prior loss" coverage insuring it against the risk it might recover nothing under the previous policy if it failed to discover the loss until after the limitations period for filing claims on that policy had run. (Cf. *Cincinnati Ins.* v. *Hopkins Sporting Goods, supra*, 522 N.W.2d at p. 839.) Thus the parties' intent to enter into one continuous contract cannot be clearly and unambiguously established by this "prior loss" provision of the contact.

The "prior loss" provision applicable to previous policies issued by Travelers also fails to support a finding of an intent the previous policies and the current policy constitute one continuous contract. By its terms, this "prior loss" provision only applies if the time limitations for filing claims under the previous policy have not run. The insured derives no benefit from a "continuous contract" in this situation because if the time limitation has not run, the insured can file a claim directly under the previous policy. As other courts have pointed out, the true purpose of this type of "prior loss" provision is to prevent the insured from recovering for the same loss under both the previous policy and the current policy. (*White Dairy Co.* v. *St. Paul Fire and Marine Insurance Co., supra*, 222 F.Supp. at p. 1018; *Globe Indemnity Co.* v. *Wolcott & Lincoln* (8th Cir. 1945) 152 F.2d 545, 548.)

Even if we were to agree coverage of "prior losses" is evidence of a continuing contract, this would not resolve the issue in the present case because the Home policies contain other provisions which support the conclusion each policy was intended as a separate, independent contract or create an ambiguity as to the parties' intent.

B. █ *Other Provisions in the Home Policies Are Consistent With Separate, Independent Contracts or Ambiguous as to the Parties' Intent.*

Home issued a separate policy document each year. Each policy was effective for a specified "policy period." The second policy stated it was a "renewal" of the first; the third stated it was a "renewal" of the second. Each policy contained a $100,000 "limit of insurance" as to crime coverage. Each policy contained a pledge from Home that "[i]n return for the payment of the premium, and subject to all the terms of *this policy*, we agree with you to provide the insurance as stated in *this policy*." (Italics added.) Each policy

also provided: "The Policy Period is shown in the Declarations. . . . [W]e *will pay only for loss* that you sustain through acts committed or events *occurring during the Policy Period.*" (Italics added.) The issuance of separate policy documents, each of which refers to terms, conditions and losses under that particular policy, is strong evidence the original policy and the subsequent renewal policies were intended to be separate and distinct contracts. (*White Dairy Co.* v. *St. Paul Fire and Marine Insurance Co., supra,* 222 F.Supp. at p. 1016; *City of Miami Springs* v. *Travelers Indem. Co., supra,* 365 So.2d at p. 1030; *Great American Indemnity Co.* v. *State, supra,* 229 S.W.2d at p. 853; *City of Middlesboro* v. *American Surety Co.* (1947) 307 Ky. 769 [211 S.W.2d 670, 672]; *Massachusetts Bonding & Ins. Co.* v. *Board of Co. Com'rs* (1937) 100 Colo. 398 [68 P.2d 555]; *Krey Packing Co.* v. *Employers' Liability Assur. Corp., supra,* 127 S.W.2d at p. 782; *Mayor, etc., of Brunswick* v. *Harvey* (1902) 114 Ga. 733 [40 S.E. 754, 756]; *De Jernette* v. *Fidelity & Casualty Co., supra,* 33 S.W. at p. 830.)

Each of the Home policies also provided, "We will pay only for covered loss discovered no later than one year from the end of *the policy period.*" (Italics added.) Thus, a loss covered under the first policy period—April 4, 1989, to April 4, 1990—would have to be discovered no later than April 4, 1991, if A.B.S. was to recover for that loss. This provision is significant evidence the policies were intended as separate, independent contracts because, it will be recalled, one of the purported advantages of a continuous contract is that the period for discovering losses follows the *total* period during which the contract has been in effect. (*Columbia Hospital* v. *United States Fidelity & G. Co., supra,* 188 F.2d at p. 657.) Using the example given in *Columbia Hospital,* if the contract was in effect for a total of 10 years the insured could recover for a loss occurring in the first year even if it was not discovered until 12 years later, 2 years after cancellation of coverage. (*Ibid.*)

The Home policies define "occurrence" as "*all loss* . . . whether the result of a single act or series of acts" without reference to a policy period or any other time boundary. (Italics added.) Home contends defining an "occurrence" as *all* loss without limitation to any specific policy period supports a finding its policies were intended to be part of a single continuing contract under which its liability was limited to a total of $100,000 for *all* loss during the life of the insurance. (Cf. *Penalosa Co-Op* v. *Farmland Mut. Ins., supra,* 789 P.2d at pp. 1199-1200 [definition of "occurrence" as acts "during the policy period" supported finding of separate, independent contracts].) We note, however, another provision in the Home policies provides: "The most we will pay for *any one 'occurrence'* is the applicable Limit of Insurance shown in the Declarations." (Italics added.) These provisions create an ambiguity as to the extent of Home's liability because while defining

"occurrence" as "all loss" suggests there can be only one occurrence during the life of the insurance, the provision restricting liability "for any one occurrence" suggests there could be more than one occurrence.

### C. *Conclusion.*

■ In summary, the policy provisions submitted on the motion for summary judgment do not clearly and unambiguously show Home and A.B.S. intended to enter into one continuous contract of insurance, nor does the "non-cumulation" clause by itself unambiguously limit Home's liability to $100,000 over the life of the insurance. The policy provisions are at best ambiguous on these issues. These ambiguities must be construed in favor of A.B.S. Therefore, Home failed to meet its burden of showing A.B.S. cannot establish a breach of contract or tortious breach of contract or that Home has a complete defense to those causes of action and the trial court erred in granting judgment to Home. (Code Civ. Proc., § 437c, subd. (o)(2).)

### DISPOSITION

The judgment is reversed and the matter remanded to the trial court for further proceedings consistent with the views expressed in our opinion. Each party to bear its own costs on appeal.

Lillie, P. J., concurred.

**WOODS (Fred), J.,** Dissenting.—Contrary to the majority opinion, I do not view this appeal as presenting an issue of first impression. For decades, courts, including those in California, have consistently held that insurance contracts are subject to the ordinary rules of interpretation. (See e.g., *Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].) If contractual language is clear, it governs without regard to the insured's subjective understanding about the terms of coverage. (*Id.*, at p. 1265; *Bettis Rubber Co.* v. *Kleaver* (1951) 104 Cal.App.2d 821 [233 P.2d 82].)

The Home Insurance Company (Home) policy in this case clearly and unambiguously provides that regardless of the number of years a policy is renewed, "no Limit of Insurance cumulates from year to year."

Accordingly, I conclude that the language of the policy is imperative and, for the reasons hereafter stated, I would affirm the judgment in favor of Home.

While I do not discern any relevant factual dispute in the record, for continuity in reading the dissent, I restate the facts in different format from that used in the majority opinion.

This action involves the terms of coverage of a comprehensive general liability insurance policy issued by insurer Home to insured A.B.S., Policy No. BPR-54116 (the Policy), which was effective April 4, 1991, through April 4, 1992, and contains a coverage limit of $100,000 for acts of employee dishonesty, with a $1,000 deductible.

The Policy served as a renewal of Policy No. BPRF 540889, which contained an effective policy period of April 4, 1990, through April 4, 1991. Policy No. BPRF 540889 served as a renewal of previous policy, Policy No. BPRF 404908, which contained an effective policy period of April 4, 1989, through April 4, 1990.

On May 21, 1991, A.B.S. Clothing Collection, Inc., presented a claim on the Policy by submitting an original property loss notice to Home. A.B.S. subsequently augmented its claim by filing a more detailed formal proof of loss, dated June 3, 1991. Therein, A.B.S. claimed that on May 20, 1991, A.B.S. had discovered a loss based upon employee dishonesty of A.B.S. employees Thomas Gallo, vice-president of finance, and Cassandra Hayes, assistant bookkeeper. A.B.S.'s proof of loss described the manner of theft, specifically indicating that as a result of the dishonest actions of Gallo and Hayes, petty cash funds had been drawn on the A.B.S. bank account aggregating to the sum of at least $1.4 million over a three-year period, between July 1988 and May 1991.

A.B.S. claims that its investigation revealed that it sustained a loss based upon the dishonest acts of Gallo and Hayes as follows:

April 4, 1988 through April 3, 1989 $100,692.27

April 4, 1989 through April 3, 1990 $557,636.97

April 4, 1990 through April 3, 1991 $779,388.45

April 4, 1991 through April 3, 1992 $ 78,181.62

A.B.S.'s present claim now seeks cumulative recovery for the full Policy limits for each year the Policy was in effect, namely April 4, 1991, to April 3, 1992, April 4, 1990, to April 3, 1991, and April 4, 1989, to April 3, 1990, as well as coverage for the period of April 4, 1988, to April 3, 1989. During the period of April 4, 1988, to April 3, 1989, the Home Policy had not yet been issued. During April 4, 1988, to April 3, 1989, A.B.S. was insured by USF&G Policy No. IMP 07843183701 and was covered for embezzlement in the sum of $100,000.

Home acknowledged the validity of A.B.S.'s loss and responded by issuing a draft in the amount of $100,000—the policy limit. However, pursuant to the provisions of paragraph 10 of the Policy in effect during the discovery of the loss, Home indicated by way of a letter of October 8, 1991, that it declined payment to A.B.S. of any additional amounts in excess of the $100,000 policy limit. Home maintained that its total liability for the claimed loss did not exceed the $100,000 already distributed to A.B.S. The noncumulative provision of the Policy provides via paragraph 10, that: "Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period."

Home maintained that it met its obligation to indemnify A.B.S. when it issued its draft for $100,000.

A.B.S. filed its complaint on May 18, 1992, against Home for declaratory relief and tortious breach of insurance contract. Home responded by way of a demurrer which was sustained with leave to amend.

Thereafter, A.B.S. filed a first amended complaint seeking declaratory relief and alleging tortious breach of insurance contract and breach of contract. Home again responded by way of demurrer which was sustained without leave to amend as to the declaratory relief cause of action. The operative pleading seeks recovery for breach of contract and tortious breach of insurance contract as against Home. Thereafter, Home answered the first amended complaint.

On January 28, 1993, Home filed and served its motion for summary judgment or, in the alternative, motion for summary adjudication of issues.

On March 18, 1993, A.B.S. filed its opposition to Home's motion. The motion was heard on April 2, 1993. The minute order issued by the trial court on April 2, 1993, provides that: "The Motion of Defendant for Summary Judgment is granted. Defendant's Motion for Summary Adjudication is Ordered placed Off Calendar as being moot. There is no ambiguity in the contract nor has Plaintiff attempted to suggest any ambiguity. There is no triable issue of fact. The contract has a limit of $100,000.00 and is not cumulative."

The trial court filed its "Order Granting Summary Judgment For Defendant" on June 25, 1993, stating therein, among other things, the following reasons for its order:

1. The undisputed facts show that Home did not breach the Policy issued in favor of A.B.S.

2. The undisputed facts show that Home did not breach the covenant of good faith and fair dealing.

3. The $278,181.62 sought by plaintiff's first amended complaint is a claim clearly excluded from Policy pursuant to the noncumulative provision.

4. There is no ambiguity in the Policy, nor has plaintiff in its papers suggested any ambiguity.

5. Mr. Taft's understanding of the Policy terms is irrelevant.

6. The Policy issued by Home to A.B.S. has a limit of $100,000 and is not cumulative.

7. There exists no triable issue of material fact.

Thereafter A.B.S. filed this timely appeal.

*A Court May Not Read an Ambiguity Into the Plain Language of a Policy in Order to Provide Coverage.*

A.B.S. is making and the majority has succumbed to what is tantamount to an improper request of this court to search for an ambiguity when the plain meaning of the Policy is quite clear. When interpreting policy language, the court is to give policy terms their plain, ordinary and popular meaning. Where the language of an agreement between the parties is clear and unambiguous, a court is not authorized to use canons of construction but is obliged to enforce the agreement in accordance with its unmistakable terms. California law clearly mandates that courts may not rewrite insurance contracts or force conclusions to exact liability where none was contemplated. (See, e.g., *Hackethal* v. *National Casualty Co.* (1987) 189 Cal.App.3d 1102 [234 Cal.Rptr. 853]; *State Farm Mut. Auto. Ins. Co.* v. *Crane* (1990) 217 Cal.App.3d 1127 [266 Cal.Rptr. 422].)

As noted by the California Supreme Court: "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. [Citation.] The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) *If contractual language is clear and explicit, it governs.*" (Italics added.) (*Bank of the West* v. *Superior Court, supra,* 2 Cal.4th 1254, 1264.) Similarly, the Ninth Circuit has persuasively stated that: " '[a] claim of ambiguity cannot be based on a strained interpretation of the terms of a policy.' [Citation.] Further, '[a] court [should not] search for an ambiguity

when the meaning of the policy is clear.' " (*Mitsui Mfrs. Bank* v. *Federal Ins. Co.* (9th Cir. 1986) 795 F.2d 827, 829-830.)

Even the authority cited by A.B.S. in its opening brief supports this position. The court in *Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920] stated that "[i]t is also well established, however, that [the rule of construction that ambiguities be resolved in favor of an insured] is applicable *only when the policy language is found to be unclear*." (Italics added.) The *Producers* court went on to find that the insured's interpretation of the policy was erroneous and unreasonable. (*Id.*, at pp. 913-915.)

It is further significant to note that other jurisdictions examining the impact of noncumulative policy provisions similar to the one at issue herein have likewise rejected A.B.S.'s technique of attempting to rely upon the rules of construction in the absence of a showing of inherent policy ambiguity. In *Santa Fe General Office Credit Union* v. *Gilberts* (1973) 12 Ill.App.3d 693 [299 N.E.2d 65, 74], the court reasoned that "since the language of the agreement between the parties is similarly clear and unambiguous, we are not authorized to use canons of construction . . . but we are obliged to enforce the agreement in accordance with its unmistakable terms."

In the Kansas decision heavily relied upon by A.B.S., *Penalosa Co-op* v. *Farmland Mut. Ins.* (1990) 14 Kan.App.2d 321 [789 P.2d 1196, 1198], the court explicitly stated that "[i]f there is no uncertainty about the meaning of the policy, it will be enforced as written. . . . [¶] [R]ules of construction . . . do not apply *unless the court first determines that the policy is ambiguous*." (Italics added.)

An insured's *subjective* understanding of the terms of a policy at the time of formation of a contract is *irrelevant* unless (1) the policy language at issue is ambiguous; *and* (2) the insured's understanding is *objectively reasonable*. (*Bank of the West* v. *Superior Court, supra,* 2 Cal.4th at pp. 1264-1265.)

Accordingly, before A.B.S. may properly ask that this court consider its subjective understanding, A.B.S. must overcome its burden to prove that the Policy language of the noncumulative provision is ambiguous. In my opinion, A.B.S. has not and cannot meet this burden.

*The Noncumulative Liability Portion of the Policy Clearly and Unambiguously Provides That Home Shall Not Be Held Cumulatively Liable.*

Section 10, the noncumulative liability portion of the Policy, plainly and unambiguously provides that: "Regardless of the number of years this

insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period."

Standard noncumulative liability provisions have been consistently upheld as imposing effective limitations on an insurer's liability upon a policy's renewal. Illustrative is the case of *Columbia Hospital* v. *United States Fidelity & G. Co.* (D.C. Cir. 1951) 188 F.2d 654 [88 App.D.C. 251], which involved facts similar to the case at issue. Therein, an employer suffered losses from a series of embezzlements by a named employee, as in the case at bar. The aggregate sum of these embezzlements exceeded the amount of the bond. The Columbia Hospital bond contained a non-cumulative term providing that the " 'payment of [annual] premiums [during such term] shall not render the amount of this bond cumulative from year to year.' " (*Id.*, at p. 657.) The employer adopted A.B.S.'s current stance, contending that each renewal constituted a new bond. The surety asserted Home's current position: that its total liability was limited to the original amount of the bond. The trial court rejected the employer's argument and held for the surety.

The United States Court of Appeal for the District of Columbia held that where there is language in a bond or its attachments which mitigates against the finding of cumulative liability, the liability is limited in the aggregate to the amount stated in the bond. (188 F.2d at p. 657; see also *Brulatour* v. *Aetna Casualty & Surety Co.* (2d Cir. 1936) 80 F.2d 834, 836; *Hack* v. *American Surety Co. of New York* (7th Cir. 1938) 96 F.2d 939.)

While A.B.S. has apparently persuaded the majority that the *Columbia Hospital* court rested its decision on the fact that the policy did not have a termination date, a review of the opinion reveals otherwise. While a continuing term was indeed a factor, it was not the sole or overriding factor. (See e.g., *Columbia Hospital* v. *United States Fidelity & G. Co.*, *supra*, 188 F.2d 654, 658.)

Similarly in *Santa Fe General Office Credit Union* v. *Gilberts*, *supra*, 299 N.E.2d 65, 74, the court found a noncumulation clause was enforceable, clear and unambiguous. The bond at issue in *Santa Fe*, contained the following noncumulative provision: " 'Regardless of the number of years this bond shall continue in force and the number of premiums which shall be payable or paid, the liability of the Underwriter under this bond with respect to any loss or losses specified in the PROVIDED clause of Section 6 of this bond shall not be cumulative in amounts from year to year or from period to period.' " (*Id.*, at pp. 69-70.)

Although the insured in *Santa Fe* asserted that the bond contained ambiguities which should be resolved in the insured's favor, the court disagreed.

The court instead found that the noncumulative provision, when read in conjunction with the entire bond, was "clear and unambiguous and impels forcefully to the conclusion that the liability of the surety shall not be cumulative from year to year or from period to period irrespective of the total amount of the employer's losses." (299 N.E.2d at p. 74.) The court reasoned that at the time the bond was issued, and again each time the policy was renewed, the insured had the option of purchasing cumulative coverage, were he then willing to pay the additional premium. (*Id.*, at pp. 71-72.)

As with the *Columbia Hospital* decision, A.B.S. wrongly implies that the *Santa Fe General Office Credit Union* court rested its decision upon the continuous nature of the policy. Clearly, while the court took this aspect into consideration, it was not the sole or deciding factor. The noncumulative language of the bond was an integral part of the decision of that court. (299 N.E.2d at pp. 72-75.)

More recently in the case of *State* ex rel. *Guste* v. *Aetna Cas. & Sur. Co.* (La.Ct.App. 1982) 417 So.2d 404, 406; affd. (La. 1983) 429 So.2d 106, the court again found a noncumulation clause to be unambiguous, noting that: "[A] careful review of the national jurisprudence reveals that where the terms of a fidelity bond, taken as a whole, indicate an intention that the original bond shall be continued for a new period or periods due to the payment of a consideration, *the contract is a continuous one and the extent of liability is to be determined by the provisions of the original bond.*" (Italics added.)

Moreover, in affirming *Guste*, the Supreme Court of Louisiana upheld that same noncumulative provision and stated: " 'Were there any ambiguity in the language, a construction imposing cumulative liability might have some basis. But, where the language is clear, in the absence of misrepresentation, the courts are not free to rewrite a commercial contract entered into at arm's length by fully competent parties. We cannot give the insured a new bond, different from the one bought and paid for, and carrying greatly extended coverage. Perhaps such litigation as the instant case will serve as an admonition to purchasers of insurance to read their contracts carefully and to seek expert advice with regard to the scope of coverage.' " (*State* ex rel. *Guste* v. *Aetna Cas. & Sur. Co., supra,* 429 So.2d 106, 111.)

Finally, in a recent decision on this issue, *Kavaney Realtor* v. *Travelers Ins.* (N.D. 1993) 501 N.W.2d 335, the court again upheld a similar noncumulative provision.

The *Kavaney* court found that Travelers' noncumulative provision was unambiguous. That provision, which is virtually identical to the one at bar,

provided as follows: " ' "Regardless of the number of years this form shall be in force, the Traveler's total liability shall not be cumulative." ' " (501 N.W.2d at p. 340.) The appellate court agreed with the trial court's finding that *Columbia Hospital*, discussed at length above, was the correct position and that the provision clearly limited liability to a single period limit.

Thus, courts have consistently upheld noncumulative provisions which are clear and unambiguous, such as the one set forth in the Policy at issue herein. While A.B.S. cites to case authority for the proposition that the noncumulation clause is subject to an alternative construction, those cases, in my opinion, are clearly distinguishable from the facts presented in this appeal as hereafter discussed.

*A.B.S. Relies Upon Case Authorities That Are Clearly Distinguishable.*

The authorities relied upon by A.B.S. for its argument that at least three other courts have agreed with its interpretation of the noncumulative provision are inapposite to the issues herein. Notwithstanding the fact that numerous courts have reached a different result than these three courts, the facts presented by the three cases cited for support by A.B.S. involved special circumstances, such as ambiguities in the noncumulative provision, ambiguities elsewhere in the policy or specific conduct on behalf of the insured which required a different result.

In *Penalosa Co-Op* v. *Farmland Mut. Ins.*, *supra*, 789 P.2d 1196, although the court determined that an insured was entitled to cumulative coverage, the court agreed that the question was "close" and the construction "strained" in order to find coverage. Significantly, the decision was based upon a finding of ambiguities elsewhere in the policy. Specifically, the court had difficulty with the *Penalosa* policy's definition of the term "occurrence." *Penalosa* is readily distinguishable as I would find no such ambiguities are present in the instant Home Policy.

*Penalosa* involved an insured's claim to recover funds based upon embezzlements committed by the insured's general manager during two separate policy periods. The insurance policy in *Penalosa* included a standard noncumulation provision similar to the noncumulation provision present in the A.B.S. policy. The policy also contained a standard limit-per-occurrence section, providing: " 'Employee Dishonesty . . . [¶] . . . [¶] a. Our liability for loss in any one occurrence shall not exceed the amount stated in the declarations for that peril.' " (789 P.2d at p. 1199.) While the *Penalosa* court held in favor of the insured, the court's decision did not hinge upon a finding that a provision similar to that of paragraph 10 of the Home Policy was

ambiguous. Instead, the court relied upon ambiguities which were specific to the occurrence clause contained in the policy to support a finding of coverage.

Specifically, the court found that the policy's ambiguities arose out of its problematic definition of the term "occurrence," which stated: " 'Dishonest or fraudulent acts or a series of similar or related acts of any employee acting alone or in collusion with others during the policy period shall be deemed to be one occurrence for applying the limit of liability.' " (789 P.2d at p. 1199.)

The court held that, while the insurer undoubtedly meant to limit its liability for any losses caused by a single dishonest employee to $100,000, the policy provision defining an "occurrence" as related acts during the policy period was ambiguous as to the scope of coverage. (789 P.2d at p. 1200.) Plaintiff argued that since the policy "defines an 'occurrence' as related acts during the policy period, related acts occurring during two policy periods cannot constitute a single occurrence." (*Id.*, at p. 1199.) After reading the entire policy, including both the noncumulative liability provision and the policy's definition of "occurrence," the court felt that it was possible one might expect that acts of embezzlement in two separate policy periods would constitute two separate occurrences, thereby entitling the insured to recover policy limits for each policy period. (*Id.*, at p. 1200.) It is significant to note that while the court construed the policy in favor of the insured, it conceded that "such a construction may be strained." (*Ibid.*)

The instant case is easily distinguishable from *Penalosa*. The policy issued to A.B.S. defines the term "occurrence" as "all loss caused by each 'employee', whether the result of a single act or series of acts." The Policy's definition does not limit each "occurrence" to acts occurring within the scope of a single policy "period" or even attempt to define an "occurrence" within any boundaries of time. Instead, the Policy's definition of the term "occurrence" applies to all losses caused by an employee or group of employees, regardless of the time (or "period") within which the losses are actually suffered. In fact, it almost seems to this dissenting justice that Home had constructed this provision with the *Penalosa* court's ruling in mind.[1]

With respect to the second decision cited by A.B.S. entitled *City of Miami Springs* v. *Travelers Indem. Co.* (Fla.Dist.Ct.App. 1978) 365 So.2d 1030, the

---

[1]It should also be stressed that the *Penalosa* court did not find the noncumulative provision inherently ambiguous. (See also *Columbia Heights Motors* v. *Allstate Ins. Co.* (Minn. 1979) 275 N.W.2d 32 [Where a policy containing a similar noncumulative provision was not held to be inherently ambiguous, but rather, the court found ambiguities generated by another policy provision contained with the general provisions portion of the policy dealing with aggregate liability.] Identical provisions are absent from the present policy.)

appellate court never reached the merits of the noncumulative clause. In that case, the court was concerned with whether or not the appellant had sufficiently pled a cause of action after the trial court granted respondent's motion to dismiss the complaint for failure to state a cause of action. The *Miami Springs* court simply found as follows: "We hold that [the appellant] pleaded a good cause of action . . . ." The matter was ordered returned to the trial court for further proceedings. (*Id.*, at p. 1032.)

With respect to *Great American Indemnity Co.* v. *State* (Tex.Civ.App. 1950) 229 S.W.2d 850, that court rested its decision in favor of the insured on the fact that certain continuation certificates created separate liabilities for each successive period. Since each renewal or continuation certificate contained the phrase, " 'the liability of the Great American Indemnity Company shall under no circumstances be cumulative, and its liability shall in no event exceed the amount of the bond described above,' " the court reasoned that the language was limited to each successive policy. (*Id.*, at pp. 852-853.) The court made no findings with respect to ambiguities inherent to noncumulative provisions such as the one at issue herein. No such certificates were issued by Home, and the applicable provision in Home's Policy is entirely different than the provision considered by the court in *Great American.*

The majority's reliance on *Cincinnati Ins.* v. *Hopkins Sporting Goods* (Iowa 1994) 522 N.W.2d 837 for the proposition that the noncumulation clause is nearly identical to the one under scrutiny in this case is accurate as far as the analysis goes. However, a careful reading of *Cincinnati* reveals that another provision in the policy of insurance, just as instrumental in the court's reasoning, was the clause dealing with provision C entitled "LOSS UNDER PRIOR BOND OR POLICY." That clause stated: "If the coverage of this endorsement is substituted for any prior bond or policy of insurance carried by the Insured . . . , which prior bond or policy is terminated, canceled, or allowed to expire as of the time of such substitution, the Company agrees that this endorsement applies to loss which is discovered as provided in Section 1 of the conditions and limitations and which would have been recoverable by the insured . . . under such prior bond or policy except for the fact that the time within which to discover loss thereunder had expired; provided: (1) the insurance under this General Agreement C shall be a part of and not in addition to the amount of insurance afforded by this endorsement. . . ."

The *Cincinnati* court appears to accentuate the importance of the language of provision C in finding an ambiguity and thereby construing the policy in favor of the insured in accordance with well-established principles of construction. In finding an ambiguity in the policy as a result of provision C, the

court stated: "Cincinnati first argues there should be no allowance for any losses occurring prior to February 1, 1989, the commencement date of the second policy. Section 1 of the endorsement, previously quoted, clearly supports Cincinnati's view. We agree, though, that the meaning of the language is clouded by provision C of the general agreements, also previously quoted. That provision, a clear incentive for insureds to continue to purchase coverage with Cincinnati, can be understood to extend the limitations period into the period of a new policy. . . ." (522 N.W.2d at p. 839.)

The *Cincinnati* court then goes on to cryptically find ambiguity in the word "cumulatively" as contained in the nonaccumulation clause of the policy and further construes the stated ambiguity in the insured's favor. The *Cincinnati* court does not enlighten the reader with the reasoning or analysis of the court in coming to its conclusion that the aforementioned word is ambiguous, but is satisfied to set forth string citations indicating which courts have concluded that the provision is ambiguous and which courts have found no ambiguity in such word usage.

Absent provision C, I am of the opinion that the *Cincinnati* court would find no ambiguity in the nonaccumulation clause in the Cincinnati insurance policy.

*In That A.B.S. Fails to Meet Its Burden to Show That the Noncumulative Clause Is Ambiguous, A.B.S.'s Interpretation Is Entirely Irrelevant.*

As discussed above, A.B.S.'s interpretation of the Policy provisions becomes relevant upon a showing of ambiguity. (See *Bank of the West* v. *Superior Court, supra,* 2 Cal.4th 1254, 1264; *Mitsui Mfrs. Bank* v. *Federal Ins. Co., supra,* 795 F.2d 827, 829-830.) In my opinion, A.B.S. has failed to meet this burden, and as such, A.B.S.'s subjective interpretation is irrelevant.

*A.B.S.'s Argument That Home Issued New and Separate Policies Is Not Supported by the Facts or Relevant Authorities.*

As an apparent fallback position, A.B.S. argues that a key issue in the resolution of this matter is whether the policy of insurance is continuous or separate. A.B.S. argues that Home issued separate policies and, therefore, the provisions of each policy relate only to that policy. On this basis, A.B.S. asserts the noncumulative provision does not carry over but is limited to each discrete policy. A.B.S.'s interpretation creates much confusion in my opinion. I must ask the question, why would a policy address the issue of noncumulation if it only relates to a single period?

The recent decision of *Kavaney Realtor* v. *Travelers Ins.*, *supra*, 501 N.W.2d 335, in my opinion, effectively undercuts A.B.S.'s position. Travelers issued three successive policies to insured KRD. As with this case, all of the policies were identical except for premiums and policy numbers. After discovering a loss which spanned several periods, KRD submitted its proof of loss to Travelers and sought to recover under the various policies. After Travelers denied that liability was cumulative, an action ensued whereupon the parties brought cross-motions for summary judgment.

The trial court found, inter alia, that the policy was noncumulative in nature. The trial court relied upon the fact that the insurance contracts were identical, but for the policy numbers,[2] and that each policy contained the phrase that " ' "Traveler's total liability shall not be cumulative." ' " (501 N.W.2d at p. 340.)

On appeal, the lower court was affirmed. After noting the noncumulative language provision, the court stated that the fact that the policy contained the following additional language was conclusive on the issue of cumulation: " 'If this form is substituted for any prior fidelity or forgery insurance issued by any of The Travelers Companies and the discovery period of such prior insurance has not expired, The Travelers Companies *shall not be liable for more in the aggregate than the limit applicable to such prior coverage or the limit applicable to Coverage B, whichever is greater.*" (Italics added.) (501 N.W.2d at p. 341.)

The court noted that "[s]ome say this provision, by itself, is sufficient to find coverage of successive policies to be limited to the face amount of any one of the policies, without cumulation or aggregation." (501 N.W.2d at p. 341) However, as stated by the *Kavaney* court, it found "more." The court found that language extending coverage to prior losses[3] added impetus to the finding that the policy was continuous and against a finding of cumulation. (*Id.*, at p. 341.)

---

[2] While A.B.S. submits that the fact that the policy numbers were different for each of the three policies issued to it by Home supports its argument that the Home policies were separate contracts, in my opinion, no significance attaches to this argument in view of the noncumulation language utilized in this instance.

[3] That language reads as follows: " 'E. EXTENSIONS OF COVERAGE [¶] Such insurance as is afforded by this form also applies as described below, but unless otherwise specified these extensions do not increase the limit of liability. [¶] 1. Coverage A or B applies to: . . . [¶] (e) Prior Fidelity or Forgery Insurance-loss which would have been recoverable under prior fidelity or forgery insurance provided: [¶] (1) there is no lapse in coverage between such prior insurance and insurance under this form; [¶] (2) such loss would have been recoverable under this form had this form been in effect when the acts causing such loss occurred; and [¶] (3) the time within which to discover loss under such prior insurance had expired; [¶] however, the amount of insurance under this extension shall not exceed the limit applicable to Coverage B in the amount for which it was written as of the time such prior insurance was replaced; or

The Home Policy contains the same language and "more." Specifically, aside from the noncumulative provision, the Home Policy contains the following provisions that demonstrate the overall consistency of the policy's intent and resolve against cumulation:

"8. *Loss Sustained During Prior Insurance*

"a. If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you . . . could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, . . . [¶] b. the insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under: [¶] (1) This insurance as of its effective date; or (2) The prior insurance had it remained in effect.

"9. *Loss Covered Under This Insurance and Prior Insurance Issued by Us or Any Affiliate*

"If any loss is covered:

"a. Partly by this insurance; and [¶] b. Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you . . . the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance." (Italics added.)

These provisions in the Home Policy are followed by section 10 entitled "Non-Cumulation of Limit of Insurance," which has been oft-quoted above. When read in context with all other provisions, it appears to this dissenting justice that the clear intent and language of the Policy demonstrates that it is not cumulative in nature. It is significant to note that A.B.S. has cited no authority for its contention that a definite duration and date of termination of a policy, or a new policy number, gives rise to cumulation of liability.

*A.B.S. Is Attempting to Create Coverage Where None Exists Contrary to the Plain Language of the Policy.*

Under California law, an insurer has the right to limit the coverage of a policy issued by it and is at liberty to limit the character and extent of risk it undertakes to assume; when it has does so, the plain language of the limitation must be respected. (*General Ins. Co. of America* v. *City of Belvedere* (N.D.Cal. 1984) 582 F.Supp. 88.) In no uncertain terms, the Home

the amount recoverable under such prior insurance, if the latter be smaller.' " (*Kavaney Realtor* v. *Travelers Ins., supra*, 501 N.W.2d at p. 341.)

Policy contains a noncumulative provision which serves to limit liability to a single policy period. Sections 8 and 9 of the Home Policy pertaining to "Loss Sustained During Prior Insurance," and "Loss Covered Under This Insurance and Prior Insurance Issued by [Home] or [its] Affiliate" are consistent with this purpose and serve to support this interpretation.

In light of what I perceive to be the unambiguous nature of the language and the fact that there is overwhelming authority in support of Home's position, I am of the opinion that this court is required to respect the plain meaning of that provision. As the plain language of the Policy must be enforced as written, Home consequently cannot be held cumulatively liable to A.B.S.'s claimed losses to the extent that they occur over a span of more than one policy period. I would affirm the judgment of the trial court and award respondent its costs on appeal.

Respondent's petition for review by the Supreme Court was denied August 10, 1995.