NOT FOR PUBLICATION



**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 10 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, <br><br>     Plaintiff-counter-defendant-Appellee, <br><br>   v. <br><br> COUNTY OF SAN BERNARDINO, <br><br>     Defendant-counter-claimant-Appellant. | No.   17-56825 <br><br> D.C. No. 5:16-cv-00128-PSG-SS <br><br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted May 14, 2019
Pasadena, California

Before: LIPEZ,[**] WARDLAW, and HURWITZ, Circuit Judges.

The question in this diversity case is whether certain language ("Condition

C") in three policies issued by the Insurance Company of the State of Pennsylvania

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Kermit V. Lipez, United States Circuit Judge for the First Circuit, sitting by designation.

("ICSOP") to the County of San Bernardino ("the County") is an enforceable antistacking provision that precludes the County from aggregating the per-occurrence policy limits in the three policies. Reviewing the district court's summary judgment decision in favor of ICSOP de novo, *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1086 (9th Cir. 2013), and applying California substantive law, *Karen Kane Inc. v. Reliance Ins. Co.*, 202 F.3d 1180, 1183 (9th Cir. 2000), we conclude that Condition C is an enforceable antistacking provision, and affirm.

1. Under California law, the plain language of an insurance contract governs. *State v. Cont'l Ins. Co.*, 281 P.3d 1000, 1004 (Cal. 2012). Like the majority of courts to interpret Condition C, we conclude that its plain language unambiguously precludes stacking. *See, e.g.*, *Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130, 147–48 (2d Cir. 2017); *Plantation Pipeline Co. v. Cont'l Cas. Co.*, No. 1:03-CV-2811-WBH, 2008 WL 10884027, at *3 (N.D. Ga. July 9, 2008); *Stonewall Ins. Co. v. E.I. du Pont de Nemours & Co.*, 996 A.2d 1254, 1259 (Del. 2010).[1] The County relies on cases that found ambiguity in contractual language that differed from Condition C and involved disputes about the definition of

---

[1] We do not rely on the unpublished section of *Fuller-Austin Insulation Company v. Highlands Insurance Company*, No. B170079, at 65–66 (Cal. Ct. App. Jan. 19, 2006), which both parties contended at oral argument supports their respective positions.

"occurrence" as applied to a highly specific factual scenario. *See A.B.S. Clothing Collection, Inc. v. Home Ins. Co.*, 41 Cal. Rptr. 2d 166, 170–74 (Cal. Ct. App. 1995); *Karen Kane Inc.*, 202 F.3d at 1183–88.

2.  California "[c]ourts will not strain to create an ambiguity where none exists." *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995). The County's various attempts to create ambiguity are ineffectual. In particular, the County's alternative reading of Condition C—that its purpose is to prevent double recovery of specific expenses—would render other language in the contract superfluous. *See Mirpad, LLC v. Cal. Ins. Guar. Ass'n*, 34 Cal. Rptr. 3d 136, 147 (Cal. Ct. App. 2005) ("An interpretation of the policy that creates an ambiguity where none existed by rendering words redundant or superfluous violates all rules of construction."). The County's proffered interpretation of "any amounts due" would lead to the potentially absurd conclusion that policy limits are reduced so long as the prior insurer has *not* paid its policy limits but are not reduced once the limits are paid. The County's arguments based on the use of the term "loss" in the policies are also unpersuasive. Condition C applies to any "covered" loss, and courts have typically rejected any interpretation of "covered" in an insurance contract as meaning something other than "within the scope of coverage." *See, e.g.*, *Wells Fargo Bank, N.A. v. Cal. Ins. Guar. Ass'n*, 45 Cal. Rptr. 2d 537, 544–45 (Cal. Ct. App. 1995).

3.  The ICSOP policies are "excess policies" within the scope of Condition C. The policies are labelled as "umbrella liability" policies, and umbrella policies ordinarily "are excess policies in the sense they afford coverage that is excess over underlying insurance." *CSE Ins. Grp. v. Northbrook Prop. & Cas. Co.*, 29 Cal. Rptr. 2d 120, 122 n.1 (Cal. Ct. App. 1994). The ICSOP policies also exhibit the hallmarks of excess policies: they include a schedule of underlying insurance and are not ordinarily triggered until the underlying policies are exhausted.[2] *See* H. Walter Croskey, et al., *California Practice Guide: Insurance Litigation*, Ch. 8-C, § 8:177 (Aug. 2018). Finally, the language of Condition C— "any *other* excess policy"— suggests that each ICSOP policy is itself an excess policy for purposes of Condition C.

4.  The County's suggestion that reading Condition C as an antistacking provision is antithetical to their reasonable expectations of coverage is unavailing. By purchasing the second and third policies, the County *did* receive additional coverage—the first policy would not cover claims for property damage resulting

---

[2]   The County's argument that the ICSOP policies sometimes act as primary insurance, and thus cannot be considered to be "excess policies," depends on accepting the proposition that the self-insured retention is not technically equivalent to an underlying insurance policy. Courts, however, have generally treated policies that are only triggered once self-insurance is exhausted as excess policies, at least in the context of indemnification. *See, e.g., Pac. Emp'rs Ins. Co. v. Domino's Pizza, Inc.*, 144 F.3d 1270, 1276–77 (9th Cir. 1998). The cases cited by the County are distinguishable because they involve the specific question of an insurer's *duty to defend* when a policy includes a self-insured retention.

17-56825

from an occurrence that developed after the expiration of the first policy period. Furthermore, the promise in Condition C's second paragraph of continuing coverage after the policy period's expiration is entirely consistent with interpreting Condition C as an antistacking provision. The second paragraph simply memorializes the principle under California law that insurers are "liable to indemnify the insured," subject to policy limits, "against all claims that resulted from some triggering harm during the respective policy periods, even if the claims arose after the policy period expired." *Cont'l Ins.*, 281 P.3d at 1006 (emphasis omitted).

5. Condition C is not an unenforceable "escape clause." California law makes clear that insurance provisions should be interpreted in their context, including as they are applied to the facts underlying the coverage dispute. *See, e.g.*, *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 855 P.2d 1263, 1271 (Cal. 1993); *Cont'l Ins.*, 281 P.3d at 1004-05 ("[L]anguage in a contract must be construed . . . in the circumstances of that case, and cannot be found to be ambiguous in the abstract." (alteration in original) (internal quotation marks omitted)). To the extent Condition C precludes the County from stacking the per-occurrence limits of the three ICSOP policies, it is not an unenforceable escape clause because it neither reduces ICSOP's coverage obligations to zero nor shifts liability wholly or largely to another insurer. *See Dart Indus., Inc. v. Commercial Union Ins. Co.*, 52 P.3d 79, 93 (Cal. 2002). The County's reliance on cases suggesting that all antistacking provisions are escape

clauses is unavailing given the California Supreme Court's recognition that antistacking provisions are enforceable. *See Cont'l Ins.*, 281 P.3d at 1009.

**AFFIRMED.**

17-56825